THE PEOPLE OF THE STATE OF CALIFORNIA *v.* S. C. HASTINGS, JOHN CURREY, and the Tract of Land in Mendocino County, California, known as the Rancho Yokaya.

Assessment Roll—Dollar Marks.—Where, in an assessment roll, there was neither a dollar mark prefixed to the figures inserted in the column headed "Valuation of lands," nor at the head of such column, and nothing appeared elsewhere in the roll to explain the intended meaning of said figures: *held*, that there was no assessed valuation of certain lands described for assessment in the roll, and such assessment was void.

Idem.—In such case, the provisions of the curative Act, passed April 2d, 1866, (Stats. 1865–6, p. 831,) do not authorize the supplying of the defects n the duplicate assessment roll, so as to give it validity.

Idem—Parol Evidence to explain not Admissible.—In any case, the duplicate assessment roll can only be corrected from data contained in the original roll, as made by the Assessor; and when not so furnished, parol evidence is not admissible to supply its place.

Idem—Said Act Ineffectual.—Said Act of April 2d, 1866, so far as it provides for amendments of assessment rolls, is ineffectual for any purpose, because if the roll, without amendment, contains substance sufficient to make it valid as an assessment of property, the curative effect of the statute is not needed; and if it does not, no legislattve enactment can either make the assessment, or empower any other officer except the Assessor to make it.

Idem—Suggestion as to Curative Acts.—The only mode in which defective assessments may be authorized by the Legislature to be corrected, is to empower

the Assessor who made the assessment to make the needed corrections, or authorize it to be done by others in his presence and upon his testimony, showing what was intended by the defective matter requiring correction. *Per* SAWYER, C. J.

APPEAL from the District Court, Seventh Judicial District, Mendocino County.

The portion of the duplicate assessment roll, as amended, which was received in evidence at the trial under the objections of defendants for want of due authentication, and because the assessment therein contained purports to have been made by a person having no legal authority to make it, is as follows:

Statement of Facts.

SUBSEQUENT ASSESSMENT ROLL, MENDOCINO COUNTY, 1864-'65.

| Names of Tax Payers. | Residence. | Real Estate. | No. of Acres. | Value of Land. | Val. of Impr's there'n | Val. of Pers'l Prop. | Total Value. | Military Tax. | Poll Tax | Total. |
|---|---|---|---|---|---|---|---|---|---|---|
| Hastings, S. C., and Currey, Jno. | Ukiah Township. | Commencing at the N. E. corner of the Rancho Sanel, confirmed and patented to Don Fernando Feliz, thence running in a northwesterly direction, and at right angles with the northern boundary line of said Rancho Sanel eight Spanish leagues; thence at right angles southwesterly — Spanish leagues to the northeasterly corner of Rancho Sanel; thence along the northern boundary line of Rancho Sanel one Spanish league to the place of beginning; containing eight Spanish leagues, or 35,552 acres. The above description of real estate belongs to S. C. Hastings and John Currey was corrected by the President of the Board of Supervisors, Auditor, and District Attorney of Mendocino County, so that it read as follows, to wit: All that tract of land situated on Russian River, in Mendocino County, State of California, and known as the Rancho Yokaya, containing eight leagues of land, more or less, and further described as the place formerly called Yokaya, and bounded on the south by the rancho of Don Fernando Feliz, and on the east, north and west by the country formerly inhabited by the unchristianized Indians, it being the rancho formerly granted to one Cayitona Juarez, by Pio Pico, Acting Governor of California, by a grant dated May 24th, A. D. 1845, with metes and bounds as follows: beginning at the northeast corner of the Rancho Sanel, and running thence up the Valley of Ukiah, on a line parallel with Russian River, 20 miles; thence south 62½°, west 306.11 chains; thence down the Valley of Ukiah, on a line parallel with Russian River, to the northwest corner of Rancho Sanel; thence on a straight line to the place of beginning. | 35,552 | 8,363 $35,552 | | | $43,915 | $1,207 69 | | |

The County Auditor proved that the dollar mark was by him prefixed to the figures in the columns headed "Value of land" and "Total value," and that he added entire the column headed "Total," and that the original assessment did not contain what he thus supplied. The Auditor further testified, under the objection and exception of defendants, on the grounds of irrelevancy and incompetency, that he supposed, from the general terms of the assessment, that the figures to which he prefixed the dollar mark were intended for dollars, and that throughout he acted upon the advice of the District Attorney and the President of the Board of Supervisors. The People had judgment. The defendants moved for a new trial, which was denied, and appealed from the judgment and order denying a new trial.

The other facts are stated in the opinion of the Court.

*R. McGarvey*, for Appellants.

*Jo Hamilton, Attorney General*, for Respondents.

By the Court, SAWYER, C. J.:

This is a suit for taxes. The case is clearly within the principle laid down in *The People* v. *San Francisco Savings Union*, 31 Cal. 135. There was nothing in the assessment roll, as returned by the Assessor, by which it could be determined, what value the Assessor put upon the land. The testimony of the Assessor, introduced on the trial, to show what he intended to represent by the figures used, was inadmissible. This was so held in the case cited (Ib., 138-9), and we know of no Act since passed authorizing such testimony. The curative Act of April 2d, 1866 (Laws 1865-6, p. 795), is precisely like the Act in question in *The People* v. *San Francisco Savings Union* (Ib., 139). And the similar Act of April 2d, 1866 (Laws 1865-6, p. 831), is no more effective than the others. Neither aid the assessment. The County Auditor, with the advice and consent of the District

Attorney and the President of the Board of Supervisors, undertook to correct the assessment roll, by supplying the dollar marks, and other omissions, in pursuance of the Act of December 23d, 1865. (Laws 1865–6, p. 5.) But this Act is not broad enough to enable those officers to supply the defects and make a valuation appear, where none appeared before. The Act only purports to authorize these officers to correct the roll and supply defects in cases, "where from the said assessment roll, duplicate, or other official document and proceedings connected therewith, it can be ascertained what was intended." The duplicate can afford no aid, as we pointed out in *The People* v. *San Francisco Savings Union,* 31 Cal. 137; for it is made out from the roll returned by the Assessor, after his duties are fully completed, and rests upon the valuation therein made. If no valuation is found in the assessment roll, none can be assumed in the duplicate. We know of no official document which the Assessor is authorize by the statute to return, other than the assessment roll itself. At all events, no other official document was introduced in evidence, and there is no pretense that the Auditor corrected by any others. Nor does the Auditor testify that there was anything which enabled him to determine what was intended. The most he can say is, that "from the writing on the assessment roll I supposed that was what was intended; there were no '$' marks on the assessment roll; they were all placed there under the advice of the officers above named." It is clear that there was nothing in the roll by which it "could be ascertained what was intended," beyond the mere surmises of the parties. The assessment roll spoke no more intelligibly to the officers named, for the purpose of correcting the roll, than it would to the Court, had it been presented as evidence, for the purpose of showing that a valuation had been made. And we so indicated in the case before cited. (Ib., 136.) The truth is, the statute in question, with respect to the point under consideration, accomplished nothing, when construed according to its own terms. It merely leaves the matter, where it was before, to be determined upon the face

of the assessment roll. If the intention cannot be ascertained from what appears, the officers are not authorized to correct; if it can be ascertained, there is no need of correction. This must be so, unless the Legislature intended to permit the officers named to make a valuation where none is made or expressed in intelligible terms by the Assessor. But the latter view cannot be the true one, for it is not so expressed. Besides, the Assessor is the proper constitutional officer to perform this duty. (Ib., 138; *People* v. *Hastings*, 29 Cal. 449.) The Legislature cannot make the original valuation, or authorize any officer other than the Assessor to do it. The Legislature may prescribe the mode of making the assessment. Defects in matters of mode, which are originally under legislative control, may be remedied by subsequent legislation of a curative character. But the valuation could not be originally made by the Legislature, or officers, other than the Assessor; and as it could not originally be so made, when not made by the proper officer, it cannot be supplied by other officers under the provisions of curative Acts. The difficulty in this case, is, that the assessment roll, on its face, did not express any intelligible valuation. And it is no more intelligible, after the passage of the two Acts, purporting to legalize the assessment of that year, than before, and the Act authorizing the Auditor, etc., to correct the roll, as we have seen, accomplishes nothing in the particular under consideration. The case of *The People* v. *Holladay*, 25 Cal. 300, therefore, has no application.

The proper mode of remedying defects of the kind in question, clearly, is, to authorize the Assessor, who made the assessment himself, in the presence of some designated officers, if this be deemed advisable, to supply omissions of the kind so as to express, in intelligible language, the value which he, in fact, fixed upon the property, the perfected assessment roll to be authenticated in some mode prescribed, as by the certificate of the Assessor, witnessed by the officers in whose presence the roll is thus perfected. This would be completing a duty before imperfectly performed. Or the

officers named in the Act of December 23d, 1865, might be authorized to supply the defect in the presence and upon the testimony of the Assessor, showing what he intended by the figures used.

The judgment is reversed and a new trial granted.