McFarland,- J.
— This is an action for the partition of a tract of land called the San Pablo Ranch, containing l7,938.59 acres. It is situated in what is now Contra Costa County, and was granted by the Mexican government, and afterwards patented by the United States, to the successors of Francisco Maria Castro, who died on the fifth day of November, 1831. The action was commenced.on November 19, 1867, in the district court of the fifteenth judicial district, in and for the city and county of San Francisco, and an interlocutory decree was rendered in that court on July 15, 1878. Several appeals were taken; and the judgment and order denying a new trial were reversed by this court, because the findings as to two or three issues were deemed defective, and furthermore, and mainly, because the decree determined rights, interests, and shares in the land only as they existed in the hands of the original tenants in common, and did not determine the present rights, interests, and shares of all the parties to the suit as they existed at the time the action was commenced. Most of the findings of the district court were approved, and the cause was remanded to the superior court (successor to said district court), with instructions to find on certain issues mentioned, and “ upon the findings heretofore made and herein approved, and those hereafter to be made under the directions of this court,” to proceed and specify in its interlocutory decree the “ rights and interests of all parties to the action,” and adjudge partition between them according to such rights and interests. (Emeric v. Alvarado, 64 .Cal, 627.) It was established by the first decree and the decision of this court that the persons denominated “ original tenants in common,” and the shares belonging to each, were as follows: Martina Castro de Alvarado, fifteen equal twenty-second parts of said rancho; Antonio Castro, Joaquin I. Castro, Juan José Castro, Gabriel V. Castro, Victor Castro, and Jesus Maria Castro, each one equal twenty-second part; *451 and Luisa Moraga de Briones, Maria de Los Angeles Moraga de Briones, José Moraga, Guadalupe Moraga de Martinez, and Francisca Moraga, each one equal one fifth of one equal twenty-second part of said rancho. (The seven persons first above named were children of Francisco Maria Castro, and the five persons last named were children' of Francisca Castro de Moraga, a deceased daughter of said Francisco Maria Castro.) After the cause went back to the superior court, further findings were had; and that court, — Judge James G. Maguire presiding, — with great care, and in a systematic method that must have cost great labor and thought, found, determined, and stated the interests and shares not only of the said original co-defendants, but of all persons holding or claiming under them, and being parties to this action, and entered an interlocutory decree adjudging partition among the parties in accordance with the findings. The case now comes here the second time, upon numerous appeals from the interlocutory decree, and from an order denying a motion for a new trial.
There are several hundred parties ^o the action. The interests of many of the parties to the appeals are friendly as to some matters and hostile as to others, so that they are appellants as to some points and respondents as to others, thus presenting different and contradictory claims upon the same transcript. The findings of fact of the superior court number 274; many of them having numerous subdivisions, and they were all necessary to the disposition of the case. These findings, with the conclusions of law, the original findings of the district court, and the last interlocutory decree, occupy 752 pages of the printed transcript No. 13276, while there is much additional matter in the other transcripts. It is apparent, therefore, that the labor of the court below must have been very great, and that it would be impossible to give here a full statement of the whole case in detail, without exceeding all reasonable limits of an opinion. *452 As, however, the opinion of this court delivered on the former appeal contains quite an extensive history of the case, and as the points arising on the present appeals may be grouped into a few general classes, we think that the case can be disposed of without much detailed statement of facts. There are five separate trans-scripts,—Nos. 13276, 13275, 13871, 13984, and 14006. In the present opinion rendered in No. 13276 we will consider and determine all the points made in all the appeals, and judgments will be rendered in the appeals based upon the other transcripts, according to the conclusions declared in this opinion. (The references here made to the transcript refer to transcript 13276, unless otherwise stated.)
I. Specific Tracts.
At various times, individual tenants in common, owning larger undivided interests in the ranch, undertook, by grant, bargain, and sale deeds, to convey the whole of particular parts of the ranch, described by metes and bounds, or other sufficient description, as though the grantor ownecPin severalty the particular part conveyed. The lands described in these conveyances are called “ specific tracts.” There are' more than a hundred of such tracts, and they are designated in the findings by numbers. The court below found that these specific tracts, conveyed by deeds purporting to convey the whole title, “ should be allotted and set apart in partition as a portion of the shares and interests of such co-tenants, and in such manner as to make such deeds effectual as conveyances of the whole title to such segregated parcels, if the same can be done without material injury to the rights and interests of other co-tenants who did not join in such conveyances, or those claiming under such other co-tenants, or any of them; and the tracts so conveyed are to be charged in proportion to their value to the interests in said . rancho of the said grantors.” (Folio 4123.) This finding is attacked as erroneous by *453 some of the appellants, who contend, — 1. That such a conveyance is void; and 2. That if not void, the grantee-under it of a specific tract should take, on partition, only such a share as is equal to the undivided interest which the granting co-tenant had in such specific tract.
Upon this subject it is declared, in section 764 of the Code of Civil Procedure, as follows: “ Whenever it shall appear in an action for partition of lands, that one or more of the tenants in common, being the owner of an undivided interest in the tract of land sought to be partitioned, has sold to another person a specific tract by metes and bounds, out of the common land, and executed to the purchaser a deed of conveyance, purporting to convey the whole title to such specific tract to the purchaser in fee and in severalty, the land described in such deed shall be allotted and set apart in partition to such purchaser, his heirs and assigns, or in such other manner as shall make such deed effectual as a conveyance of the whole title to such segregated parcel, if such tract or tracts of land can be so allotted or set apart without material injury of the rights and interests of the other co-tenants who may not have joined in such conveyance.” If this section of the code controls in the case at bar, then the question under discussion must be answered adversely to the contention of appellants. But the part of the section above quoted was not enacted until 1876; and as the conveyances here involved were made prior to that time, it is contended by appellants that the said provision of the code is not applicable to this case.
Of course, if this amendment to the section was an entirely new provision, and completely changed the old law upon the subject, it would not be retroactive, and could not destroy or seriously disturb prior vested rights. But in our opinion, the law was substantially the same before the amendment as after it. From a general statutory enactment not expressing a design to change the *454 law, there arises no necessary presumption that the law was different before the enactment. It was said at a very early date in the history of our jurisprudence that “to know what the common law was before the making of a statute, whereby it may be known whether the statute be introductory of a new law or only affirmatory of the common law, is the very lock and key to set open the windows of a statute ”; and that “ in all general matters, the law presumes the act did not intend to make any alteration.” These rules were approved by our predecessors,— the learned Justice Field delivering the opinion of the court, — in Baker v. Baker, 13 Cal. 95, 96. Statutes are frequently intended to remove all doubt and uncertainty as to some principle of law, and to state in apt, distinct, and explicit language what the law is upon a particular subject; and we think that such was the effect of the amendment which we are now considering. In the same amendment it was also enacted, for the first time, that when a co-tenant had made improvements on a part of the common land, that part should be allotted to him, on partition, without considering the value of such improvements, if the same could be done without material injury to the other co-tenants; but it is not contended that such was not the law before the amendment. In Seale v. Soto, 35 Cal. 102, decided in 1868, the lower court had ordered, in its interlocutory decree, “thatthere be set off to the said several parties such portions of said premises as will include their respective improvements, provided, always, that the rights or interests of neither of the other parties be prejudiced thereby”; and this court held, on appeal, that the order was “ equitable, just, and proper,” and “ cannot be successfully assailed.”
The decision of this court on the former appeal, if not declaring, as the law of the case, that the rule laid down in section 764 should govern, is at least strong authority to that point. Mr. Justice Thornton, who delivered the leading opinion in the case, when giving reasons for the *455 proposition that an interlocutory decree should determine the rights of all the parties, urges, as an argument, the consideration that otherwise the provisions of section 764 could not be carried out. He quotes the section in full, and says: “We cannot see how these provisions can be carried out by the referees, unless the interests of each party is ascertained by the court, and stated specifically in the decree. And when the decree for partition is made, as it is in this case, the court must determine under which of the original co-tenants each party claims, and state it in the decree, so that the referees can perceive clearly and be enabled to execute the provisions in section 764 when inserted in the decree.” None of the other justices dissent from this part of the opinion, although Mr. Justice Boss holds that it was sufficient, in the first instance, to determine the shares and interests of the original co-tenants. The concurring opinion of Mr. Justice McKee merely fortifies the opinion of Justice Thornton as to the proper character of the interlocutory decree, and says, among other things, as follows: “ The next step in order is to ascertain and determine the respective rights and interests of each of the tenants in common, in the mode prescribed by sections 763, 765, and 799 of the Code of Civil Procedure, and adjudge partition between them according to their respective rights.” Moreover, in the findings of the district court which were then under the review of this court, there was a finding on the subject of specific tracts to the precise effect and in the identical language of the finding of the superior court which we are now considering (finding 24, folio 1826); and the superior court was directed to “ proceed upon the findings heretofore made and herein approved.” Therefore, whether or not the decision can be taken as a direct adjudication of this point, it is evident that, in the judgment of the court at that time, the true rule on the subject is that declared *456 in section 764. And we are satisfied, upon principle and authority, that such is the correct rule.
It is clear that a deed made by one co-tenant conveying a specific part of the land of the co-tenancy is not void. That was definitely settled in Stark v. Barrett, 15 Cal. 362. In that case one of the co-tenants (Vaca) had undertaken to convey all his right, title, and interest in and to a tract containing fifteen hundred acres, being a part of the common land; and it was argued, and authorities cited to the point, that the conveyance was void because it destroyed the unity of possession, because it impaired the right of the other co-tenants to partition, and imposed additional burdens on them when seeking partition, etc. But the court, after reviewing the authorities, held definitely that such a conveyance was not void, although, as against the other co-tenants, the grantee might lose his rights on partition. And of course, where, as in the case at bar, a co-tenant undertakes to convey the whole title to a specific tract, his conveyance, under well-settled principles, operates as an alienation of at least all the right and interest which the grantor had in the specific tract; so that he comes within the rule that his conveyance is not void, as established in Stark v. Barrett, 15 Cal. 362. (Freeman on Cotenancy and Partition, secs. 204 et seq.)
Furthermore, when a co-tenant undertakes by a bargain and sale deed to grant a specific tract in severalty, although his deed will not convey the interests of his co-tenants, he is estopped, under well-settled rules, from denying, as against his grantee, that he owned a less interest than his deed purports to convey. And under equally well-settled rules, if he afterwards acquires the title of his co-tenants in the specific tract, such title will inure to the benefit of his grantee; and if, upon partition, such specific tract be allotted to him, then it happens that he does acquire his co-tenants’ title, and it passes to his grantee. But a suit in partition under our code is, in *457 its nature and essence, equitable (Emeric v. Alvarado, 64 Cal. 619; Gates v. Salmon, 35 Cal. 593; 95 Am. Dec. 139); and the court, in its decree, proceeding to do what is “ equitable, just, and proper,” will not only allot to a co-tenant that part of the common land upon which he has valuable improvements, but will also set apart a specific tract to the share of a co-tenant who has undertaken to convey the title in fee to such tract in severalty, so that the grantee may have that which is justly his, when such disposition of the land can be made “ without material injury to the rights and interests of the other co-tenants.” (1 Story’s Eq. Jur., sec. 656 c; Freeman on Cotenancy and Partition, secs. 202-205; McKee v. Barley, 11 Gratt. 340; Campau v. Godfrey, 18 Mich. 27; Holcombe v. Coryell, 10 N. J. Eq. 392; Nichols v. Smith, 22 Pick. 319.)
There are no decisions in this state which assert a different rule. Gates v. Salmon, reported in 35 and also in 46 California, is cited on both sides. In the case as reported in 35 California, the only point decided is, that in a suit for partition, grantees of specific tracts are necessary parties to the action; and the views expressed in the opinion on the general subject are in harmony with the conclusion above stated. In the case as reported in 46 California, it is stated that the grantees of specific tracts under certain deeds acquired the interests which their grantors had at the time of the execution of the deeds; but the character of such deeds does not appear, nor, in the confused state of the pleadings and issues and parties in that case, does it appear against whom the statement is intended to apply, or between what parties the question was raised. Of course, one tenant in common cannot, as against his co-tenants, absolutely convey away the interests of the latter in any part of the common land.
In Pfeiffer v. Regents, 74 Cal. 156, a tenant in common had undertaken to grant to a stranger the right to perpetually divert water from the common land upon the *458 several land of the grantee; and in support of that grant the respondent had cited Stark v. Barrett, 15 Cal. 362, and Gates v. Salmon, 85 Cal. 593, 95 Am. Dec. 139, and other cases in which the rule applicable to conveyances of specific tracts was discussed, and had sought to invoke that doctrine in behalf of the asserted water right. And it was in that connection that the court said that the former decisions on the subject should not be pushed further; that is, that they should not be so extended as to embrace the asserted right of one tenant in common to create an easement on the common land. The case, however, recognizes the rule as hereinbefore stated. (It may be remarked, as was said in that case, that it appears from many cases in the California reports to have been a common custom among the owners of large Mexican grants in California for individual co-tenants to convey specific parcels of the common land. The custom probably grew out of the fact that during the long periods of time necessary to complete titles, to obtain patents, and to make partitions, there could be but little beneficial use of the land, unless it were segregated into parcels by the co-tenants and their grantees.)
Our conclusion on this point is, that the court below was right in holding that specific tracts embraced in deeds purporting to convey the whole title should be allotted in severalty to the grantees therein, and charged respectively to the shares and interests of the granting co-tenants, where it could be done without material injury to the rights of the co-tenants not joining in such deeds, in manner as set forth in the findings and decree.
2. There were also quitclaim deeds of interest in specific tracts; and with respect to them the court found as follows: “ And it further appearing that various of said co-tenants sold fractional undivided interests in specific tracts out of the common land of said rancho, and executed to the purchasers deeds of conveyance, purporting to convey interests in such specific tracts to the pur *459 chasers in. fee, the interests described in such deeds should be allotted and set apart in partition to such purchasers, or their grantees, respectively, in such manner as to make such deeds effectual as conveyances of such interests, if the same can be done without material injury to the rights and interests of other co-tenants who did not join in such conveyances, or those claiming under such other co-tenants, or any of them; and the interests so conveyed, and hereinafter designated as fractional interests of specific tracts, are to be charged in proportion to their value to the interests in said rancho of the same grantors.” (Folios 4124,4125.) We see no error in this finding. The grantee in such a deed cannot expect, or legally claim, more than the deed purports to convey, —which is merely the share of the grantor in the tract. The contention of some of the appellants that such a deed should be filled by an allotment of the whole tract in severalty cannot be maintained. And where there is a covenant of warranty in such a deed, it attaches merely to the interest which the deed purports to convey. (Kimball v. Semple, 25 Cal. 441; Gee v. Moore, 14 Cal. 472; Morrison v. Wilson, 30 Cal. 344; San Francisco v. Lawton, 18 Cal. 465; 79 Am. Dec. 187; Barrett v. Birge, 50 Cal. 655; Brannock v. Monroe, 65 Cal. 491.)
II. Appeals of Maraschi et al., on Transcript No. 13275.
1. The views and conclusions above expressed on the subject of specific tracts, and the distinction between a deed purporting to convey the whole tract in severalty, and a deed purporting to convey only the grantor’s interest in the tract, are determinative against the appellants of the appeals taken from the interlocutory decree by appellants Maraschi, Ruth Ann Boyd, administratrix, Boorman, administrator, et al., and by appellants Pit-man, Gill, and Mayhew, all founded on transcript No. 13275. We have carefully examined the able brief of *460 counsel for those appellants, in which it is argued that the grantees in certain deeds which do not purport to convey more than the interests of the grantors in certain specific tracts should have allotted to them the whole of said tracts; but we do not think it necessary to discuss that question any further. In addition to what we have before said, it is sufficient to say that, in our opinion, the law is correctly stated in section 764 of the Code of Civil Procedure.
2. And such views are also determinative against the appellants, of the appeals taken by the appellants William Meyer, Richard O’Neil, et ah, whose contention on this point has been very ably presented by their counsel.
3. The appeal of Pitman, Gill, et al., from an order denying them a new trial, based on the record in transcript No. 13984, presents no point not raised by their appeal from the interlocutory decree.
III. Specific Tract No. 41.
The court found that specific tract No. 41 should be allotted to John Davis; and appellant Emily S. Tewksbury contends that the part of the decree so allotting said tract is erroneous.
John Davis deraigns title to said specific tract No. 41 through a deed from James T. Dean; and the title of Dean came through a deed to him from Gabriel Castro and his wife, Marcelina Castro, made on August 20,1853. (Folio 2604.) This latter deed was duly executed in. every respect except this: the notary who took the acknowledgment failed to certify that the wife acknowledged it “ on examination apart from and without the hearing of her husband.” Therefore, if at the date of the deed the title to said tract No. 41 was in the wife, Marcelina, it did not pass to Dean; but if the title was then in the husband, Gabriel, it did pass to Dean. Appellant contends that the title was then in the wife, because on November 15, 1851, Gabriel Castro (under *461 whom both parties claim) and his wife made a deed to one Jesus Acosta, which, as is contended, embraced said tract No. 41, and on the same day said Acosta executed a deed to the said wife, Marcelina, which, as is contended, also embraced said tract. (Folios 2583 et seq.) These two last deeds were without consideration, and were intended to consummate a gift from the husband to the wife. These deeds were recorded. But the court finds that Dean purchased in good faith for a valuable consideration, and without notice of said deeds.
We think that said deed from Gabriel Castro and his wife to Acosta did not convey said specific tract No. 41. In the first place, there was no description in said deed which embraced said tract. The only description, or attempted description, of land in said <Jeed is as follows: “All our right, title, and interest in and to all the land inherited by us, or either of us, from Francisco Maria Castro, the father of said Gabriel Castro.” There is no reference to the San Pablo Rancho, nor is there any description by metes and bounds, or by common name, or by any sort of designation by which real property is usually described. There is no mention of any county, state, or nation. The whole of the force, point, and virtue of the alleged description rests solely on the word “ inherited.”
But Gabriel Castro, son of Francisco Maria Castro, did not really inherit any part of the San Pablo Rancho from his father. If any interest in the ranch passed to the son from the father, it passed by the will of the latter, in which there was the following clause: “ I order, and it is my will, to leave, as in fact I do leave and give, all my property, rights, and actions, together with all the land of my Rancho San Pablo, to my wife one half, and the remaining half equally between my legitimate sons and daughters, each being owner of his equal part or share of the effects.” (64 Cal. 549.) But one who gets property by will does not inherit; he takes by purchase, *462 and not by descent. We are well aware that in construing deeds and other contracts, the strict legal meaning of a word will not be adhered to, where the context fairly shows that a different meaning was intended; but where there is no such context, and the word alone is relied on, it is difficult to see why it should be given any other than its legal meaning.
Moreover, the grant for which Francisco Maria Castro made several applications in his lifetime included only three square leagues. (It is not necessary here to linger over the question whether any grant was ever made of any land to said Francisco. The facts are stated in the original findings, and may be found in 64 California, commencing at page 543. The real grant upon which title vested was made after his death, to his wife and children, upon application of his son Joaquin I. Castro.) After the death of Francisco, his son Joaquin renewed his father’s application for the three leagues; but before any final action on that application, he made another application for four leagues. It was upon this final application that the only grant ever consummated was .made; and there is no showing that specific tract No. 41 was within the land applied for by Francisco.
Again, we think that the certificate of acknowledgment of the deed from Gabriel Castro and wife to Acosta is fatally defective. It commences as follows: “Be it remembered, that on the fifteenth day of November, A. D. 1851, before me, Gustavus Harper, one of the justices of the peace in an'd for said-, came the above-named, etc.,” and it is signed “ Gustavus Harper, J. P.” This certificate shows neither venue nor jurisdiction. It does not appear from it of what county Harper was a justice,% or whether he was a justice of any county, or in what county or state the acknowledgment was taken. The fact that the name of a certain state and county were written at the commencement of the deed has no more significance than- the appearance of those names in the *463 body of the deed, where they usually appear, would have had. Defects in certificates of acknowledgment should be usually overlooked as much as possible, in furtherance of justice; but in this case the defect is radical, and so far as we can see, to condone it would not be in the interest of justice.
We do not think that the allotment of specific tract No. 41 to John Davis was erroneous.
IV. Title of Ann Wilson to Specific Tract No. 42.
The court allotted this tract to Ann R. Wilson; and with respect to that matter, appellant Emily Tewksbury, on her appeal from the order denying her motion for a new trial, contends that the court erred in excluding from evidence a paper claimed to be a certified copy of a deed from Juan José Castro to his wife, Petra Bernal Castro, dated July 15, 1852, and recorded November 1st of the same year. But appellant Tewksbury is in no position to present that point. The deed was offered in evidence by defendant Gutierrez, through her attorney, George E. Lawrence, and was objected to on various grounds by the defendant Mary E. Wakeman, and also by some other parties. When the objection was sustained, an exception was taken by said Gulierrez alone, through her said attorney, Lawrence. On a subsequent day, the defendant William Leviston asked, in his name, to have the benefit of the exception taken by Gutierrez, and his request was allowed. The proceedings with respect to the point are to be found in transcript No. 14006, from folio 8235 to 8248; and there is nothing there to show that appellant Tewksbury excepted, or took any step in the matter. Neither Gutierrez nor Leviston moved for a new trial. The point, therefore, does not arise on Tewksbury’s appeal from the order denying a new trial, and her counsel have probably come to take that view, for in their reply brief they make no answer to the position as above stated, taken *464 by Hittell and Belcher, counsel for respondents. It is not necessary, therefore, to discuss the objections made to the introduction of said deed, but we may say that if the question were before us, we would be strongly inclined to hold that there was no error in excluding the deed.
V. Tewksbury Tax Deeds.
At the first trial, the district court found that several tax deeds upon which Jacob M. Tewksbury relied for title to various parts of and interest in the ranch were invalid; but this court held on the former appeal that the findings of fact as to those tax titles were insufficient. At the trial in the superior court the facts were fully found, and the said deeds were again found to be of no value. Appellant Emily Tewksbury now attacks the findings as to two of those deeds, viz., the deed as to 0. T. Pollard of one eighth of the rancho, dated August 25, 1856 (folios 3735 et seq.), and the deed to J. M. Tewksbury of a specific tract of 213 acres, dated October 5,1860 (folios 3759 et seq.).
With respect to these deeds it may be sufficient to say, in support of the judgment, that the court found as follows: “At the said several times that the said Jacob M. Tewksbury acquired, or pretended to acquire, interests in the said San Pablo Ranch, or any part thereof, as herein-before stated (under the tax sales), he became or was a tenant in common in the whole of said rancho with said Martina Castro de Alvarado and others” (folios 1773, 1774), and that there was evidence to support this finding. Tewksbury, therefore, being an owner, and being under “ a legal or moral obligation to pay the taxes, he could not, by neglecting to pay the same, and allowing the land to be sold in consequence of such neglect, add to or strengthen his title by purchasing at the sale himself, or by buying from a stranger who purchased at the sale. ” (Moss v. Shear, 25 Cal. 45.)
*465 There are other reasons why the tax sales were not valid, which we notice briefly.
1. The deed to Pollard was made under the Revenue Act of May 15, 1854. (Stats. 1854, p. 88.) Appellant merely introduced the tax deed, relying upon it as making aprima facie case, and introduced no other evidence. (Transcript No. 14006, folio 6352.) Section 90 of the said act of 1854 provided that the deed should he prima facie evidence of certain things, but section 55 of the Revenue Act of April 29, 1857, expressly repealed said section 90 of the act of 1854. (Stats. 1857, p. 344.) And in the absence of the effect given to the deed as evidence by the statute, proof of the preliminary steps necessary to vest the power of sale was essential. (Keane v. Cannovan, 21 Cal. 291; 82 Am. Dec. 738.) In the case of Moss v. Shear, 25 Cal. 45, cited by appellant, the point that the tax deed was not prima facie .evidence was not made by counsel, or noticed by the court. The other cases cited were under the act of 1857. Furthermore, the assessment was invalid, because the owner was Castro» and the assessment was made to “ Castero.” (People v. Whipple, 47 Cal. 591; Crawford v. Schmddt, 47 Cal. 617; Kelsey v. Abbott, 13 Cal. 609; Smith v. Davis, 30 Cal. 537.) Lake County v. S. B. Q. M. Co., 66 Cal. 398, is also to the same point; for while the tax sale involved there was governed by the subsequent amendment to the revenue law, which provided that a mistake in the name of the owner of real property should not invalidate the assessment (Pol. Code, sec. 3628), the court applied the rule to the assessment of personal property, and held that a mistake in the name of the owner, less important than the one in the case at bar, was fatal, saying that “in making the assessment, the provisions of the statute under which it is to be made must be observed with particularity.” It is contended by appellant that “Castero” sounds like “Castro,” and by respondents, that in pronouncing the former name the accent should be on the second syllable, *466 — thus making the sound entirely different; but it is not a case to which the rule of idem sonans applies. Tax proceedings .are in invitum, and, to be valid, must closely follow ,th.e statute; and idem sonans applies to cases of pleas of misnomer and issues of-identity, where the question is whether .the change of letters alters the sound,— not to assessments .and other cases of description, where the written name is material. “Different letters will make different names, though the sound be the same.” (Commonwealth v. Gillespie, 7 Serg. & R., 478; 10 Am. Dec. 475.) The deed to Pollard described the land sold as having been assessed to " Castro ” and does not purport to be made in pursuance oían assessment to “ Castero.” (Folio 3737.)
The assessment was invalid because on the original assessment roll there was nothing to show what valuation had been put on the land and improvements attempted to be assessed to Castero; and on the duplicate roll referred to in the deed there is nothing whatever to show what was meant or intended by the figures in any of the columns headed “Value” or “Taxes.” (Transcript, folios 3745 et seq., and 3752 et seq. The exhibits there referred to are to be found in the original of transcript 13276.) The duplicate roll is the tax collector’s warrant. (Act of 1854, secs. 85, 88.)
There are other objections to the assessment and deed, not necessary to be here noticed.
2. The tax deed to Tewksbury of the specific tract of 213 acres, founded on proceedings under the Revenue Act of 1857, was also valueless, because the assessment upon which it was based was invalid. With respect to this assessment, the court finds — both as to the original assessment and the duplicate roll—that “there is no dollar-mark, word, abreviation, or other character or thing in said book, or any page thereof, to show what was meant or intended by the figures in the columns headed “Value” or “Tax.” (Folios 3774-3778.) That *467 such a defect is fatal to an assessment has been too long the established law to be now questioned; it has become a rule of property. (Hurlbult v. Butenop, 27 Cal. 57; Braly v. Seaman, 30 Cal. 611; People v. S. F. Savings Union, 31 Cal. 132; People v. Hastings, 34 Cal. 571; People v. Hollister, 47 Cal. 408.)
We think, also, that the attempted description of the property sought to be assessed was fatally defective; but we do not deem it necessary to discuss that question here. (See description at folio 3772.)
VI. Specific Tract No. 30.
On June 1, 1859, Joseph Boyd and wife executed a deed to J. M. Tewksbury, describing a certain part of the ranch, containing ninety-nine acres, which was afterwards designated as specific tract No. 30. (Folio 2264.) The court held that this deed carried only the undivided interest which Boyd then had; and appellant contends that the court erred in not holding that it carried the whole tract in severalty.
This point is very meagerly argued. The general counsel for respondents say that it “specially concerns respondent Boyd, and will be very fully and ably argued by her counsel”; but we do not find it to be fully argued anywhere.
The finding of the court represents that the deed contained some words purporting to grant, bargain, and sell the described tract; but it also contained these words: “ Being the same land derived to the said party of the first part by a deed from Martina Perez, dated September 6, 1858.” And the said deed from Martina Perez to Boyd only purports to convey “ all the right, title, and interest” — being an undivided interest — in said specific tract No. 30. At the time of the deed from Boyd to Tewksbury, Boyd did not own any interest as a co-tenant in the San Pablo Rancho; the only interest which he owned was the undivided interest in said specific tract *468 No. 30, which he had obtained under said deed from Martina Perez, although several years afterwards he did acquire a similar undivided interest in the rancho,— equal to one hundred acres. (Folio 2263.) He was therefore not in the position of one to whom the rule as stated in section 764 of the Code of Civil Procedure applies; that is, he was not one who, “being the owner of an undivided interest in the tract of land sought to be partitioned, has sold to another person a specific tract, by metes and bounds out of the common land.” Moreover, on the same day on which said deed was made by Boyd to Tewksbury, the latter made a deed to Boyd of all his (Tewksbury’s) interest in another specific tract of the rancho (folio 3158), and there is reason to believe, as contended by respondent, that the transaction between the parties was merely one of exchange. Tewksbury knew that the only interest which Boyd had in tract 30 was that which he had derived from Martina Perez, as stated in the deed itself; Boyd had no general interest in the rancho which he could concentrate upon the particular tract; and as there is no evidence before us showing what circumstances there were to indicate the understanding and intention of the parties, we do not see how we can hold that the court erred in determining that the said deed was only intended to convey, and did only convey, Boyd’s undivided interest in said specific tract No. 30.
VII. The Dall Claim to Specific Tract No. '115.
Appellant George W. Haight contends that this tract passed from the original co-tenant, Victor Castro, to John H. Dall (and through Dall to said appellant), and that the court erred in not so holding. (The facts on this point are stated from folios 3268 to 3283, and from 3321 to 3379.) The court held that the interest claimed by Dall passed to Ephraim Leonard by virtue of the foreclosure of a mortgage made to him by said Victor Castro; and we think that the court was right.
*469 On April 23,1853, the said Victor Castro executed and delivered to said Leonard a mortgage, with covenants of warranty, of all Castro’s right, title, and interest, in law or in equity, in the rancho, and all his improvements on the same, to secure the payment of a certain promissory note of even date given by Castro to Leonard, which mortgage was duly recorded April 21, 1853. But five days prior thereto, viz., on April 16, 1853, said Cas-. tro had executed to said Dali a deed purporting to convey said tract No. 115. This deed, however, was not recorded until June 9, 1853; and at the time of the execution, delivery, and recording of said mortgage to Leonard, the latter “ had no knowledge of said previously mentioned deed of said Victor Castro to said John H. Dali.”
There are also these other facts: In November, 1852,. Castro and Dali entered into a written contract by which Dali was to build a second story on the dwelling-house of Castro, on the ranch, and Castro was to pay Dali two thousand dollars, and to convey to him one hundred 'acres of land situated on the ranch, — the one hundred acres, however, not being described or located. In pursuance of this contract, Castro, before April 1, 1853, paid Dali the two thousand dollars, and put him in possession of a tract of land on the ranch, which was after-wards designated as specific tract No. 115. Before April 1, 1853, Dali leased said land to Charles H. H. Cook and E. W. Hiller. “ Said Cook had, prior to the making of said contract between said Victor C.istro and said Dali, and prior to and up to the making of said lease, lived and resided on said San Pablo Rancho, acting as the servant and looking after the interest of said Victor Castro.” Cook and Hiller were in the actual occupation of said tract of land at the time of the making of the said note and mortgage to Leonard. On the sixteenth day of April, 1853, one Smiley, who was the authorized agent of Dali, surrendered the said contract of purchase to Castro; and *470 Castro on the same day executed and delivered to Smiley, for Dali, the deed before mentioned.
On May 13, 1856, Leonard commenced an action to foreclose his mortgage, making Dail a party defendant, with the usual averment that Dali claimed some interest, etc., in the premises, and that such interest, if any he had, was subsequent, etc., to the mortgage. Dali answered, setting up his said contract of purchase of 1852, his possession, and his said deed of April 16, 1853, his alleged priority under the same, and averring that plaintiff had notice of his title. The court, in due course, rendered judgment for plaintiff, adjudging and decreeing, among other things, that plaintiff had no notice of Dali’s asserted title, and barring and foreclosing all the latter’s right, title, interest, and equity of redemption in and to the mortgaged premises, and every part thereof. Under this judgment the premises were duly sold, and Leonard, becoming the purchaser, received in due course a sheriff’s deed therefor.
So far as appellant stands upon his unrecorded deed alone, the question is, we think, of easy solution. There is considerable abstruse learning to be found in the books on the question. Who are proper parties in a foreclosure suit, and whose titles or interests can be adjudicated in such suit? In McComb v. Spangler, 71 Cal. 418, the rule was laid down that “the only proper parties are the mortgagor and mortgagee, and those who have acquired rights under them subsequent to the mortgage.” In that case, the wife alone had executed a mortgage on community property; the husband was made a party defendant to the foreclosure suit, and made default; and it was held that he was not estopped by the decree because his claim to the land was “ adverse and paramount to that of the mortgagor.” But to apply that rule to the case of a prior unrecorded deed of the mortgagor would be to entirely ignore the statutes about recordation, and destroy the protection which they give, and upon which *471 a purchaser may securely rely. Those statutes, at that time, provided that “every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this act, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate, or any portion thereof, when his own conveyance shall be first duly recorded”; and that “the term ‘conveyance/ as used in this act, shall be construed to embrace” a mortgage. Dali’s deed, therefore, as against Leonard’s mortgage, was void. As against Leonard, it had no existence before its recordation in June following; and whatever right he could then assert under it was “subseqxient to the mortgage,” and could properly be subjected to the foreclosure suit.
2. It is contended, however, that because Dali’s tenants, Cook and Hiller, were in possession, therefore Leonard must be held to have had notice of Dali’s claim under his contracfand deed. But the court finds that Leonard had no notice of such contract or deed; and as there was no motion for a new trial, that finding is conclusive. The force of the fiixding of this ultimate fact is not broken by the finding about the possession.
It is to be observed that the statute makes no exception in favor of a party in possession; and the courts had to exercise some liberality of construction to make such exception. The philosophy upon which it was founded was this: That where a third party was in the open and conspicuous possession of the land conveyed, with nothing to indicate that he was not holding adversely to the graxitor, the graxrtee, although a purchaser “ for a valuable consideration,” should not, in view of such pronounced hostile possession, be deemed to be a purchaser “in good faith.” But the authorities on the subject in this state, many of which are cited in the briefs, go only this far: that such possession is evidence of notice, and puts the purchaser on inquiry. It is not, *472 ipso facto, notice, but merely evidence- tending to show notice.
The first thorough discussion of the subject in this state is to be found in Hunter v. Watson, 12 Cal. 363; 73 Am. Dec. 543. In that case the learned Justice Baldwin, in delivering the opinion of the court, says that the question is “full of embarrassment,” and comes to a conclusion with great hesitancy. He suggests “ whether the statutes of registration should not be thoroughly revised, so as to secure uniform and certain rules for the disposition and protection of real estate in the future.” After reviewing the authorities, he says that “ some of the cases hold that mere possession is actual notice, and will not suffer any proof to be made to the contrary; others, and perhaps the greater number, hold that it is only a presumption of notice, v. hich may be rebutted; and others, again, hold that the possession is not so much notice of the title of the holder, as a circumstance which should put the purchaser on inquiry”; and the utmost conclusion to which he comes is, that “ open, notorious possession of real estate, by one having an unrecorded deed for it, is evidence of notice to a subsequent purchaser of the first vendee’s title,” and that “the possession must exist at the time of the acquisition of title or deed of the subsequent vendee.”
The rule, however, was modified and more fully explained in subsequent cases. Fair v. Stevenot, 29 Cal. 489, is a leading case on the subject. In that case Mr. Justice Rhodes, delivering the opinion of the court, discusses the question very thoroughly, and says, among other things, as follows: “ The fact of possession is only evidence tending to prove notice. Neither the recorded deed in the one case, nor the possession of the grantee of the unrecorded deed in the other, is the ultimate fact, but notice is the ultimate fact to be established by the evidence. Upon proof being made of the record of the deed, the notice necessarily results by operation of law; *473 but not so upon proof of the possession, for the possession may be taken and held in such various modes, and accompanied by so many qualified circumstances, that eacli case must depend upon its own peculiar features, and therefore proof of possession is not decisive, without regard to the other facts of the case.” In Pico v. Gallardo, 52 Cal. 206, the court cites Fair v. Stevenot, 29 Cal. 489, and says: “ The court below found that at the date of the sale and conveyance to plaintiff, the defendants were in possession of the demanded. premises. Such possession was not notice of the defendants’ equities, but only evidence tending to prove notice.” Smith v. Yule, 31 Cal. 180, 89 Am. Dec. 167, is also to the same point, and the opinion.in that case is very full and instructive. (See also Thompson v. Pioche, 44 Cal. 516.) The above cases state the true rule, and a close examination of the other California cases will disclose nothing in conflict therewith, although there is a dictum to the contrary in Talbert v. Singleton, 42 Cal. 395.
Of course, where it is claimed that the circumstances of possession in a particular case are sufficient to show notice, and that the court or jury erred in finding otherwise, such finding can be reviewed on a statement or bill of exceptions which brings up the evidence; but in the case at bar there was no motion for a new trial (as to this matter), and there is no evidence before us. It does appear that, prior to and almost up to the very time of the execution of the mortgage, Cook, who was in possession, “resided on said San Pablo Rancho acting as the servant and looking after the interest of said Victor Castro”; and it may have appeared that Leonard had the right to suppose that the servant was acting for the master, and that therefore there was no such want of “ good faith ” as would make an exception to the statutory rule. In Smith v. Yule, 31 Cal. 180, 89 Am. Dec. 167, — a case quite similar to the one at bar, — the court say that “inquiry does not become a duty, where the apparent *474 possession is consistent with the title appearing of record,” and that “ the subsequent purchaser is not justly chargeable with fraud in failing to make inquiry for a prior unrecorded conveyance, unless there is some fact or circumstance apparent to his observation calculated to excite the suspicion of a prudent man dealing with the property that a prior conveyance had been made.” At all events, in the case at bar, the court found as an ultimate fact that there was no notice; and the evidence upon which the finding was based not being before us, the finding cannot be disturbed.
Moreover, we think that Dali’s claim of possession and notice to Leonard was conclusively adjudicated against him in the foreclosure suit. Having set up said notice in his answer, and the court having found and decreed against him, he was, in our opinion, notwithstanding some confusion of authorities on the general subject, concluded.
VIII. Specific Tract No. 78.
Specific tract No. 78 is a small tract containing 30.47 acres (folio 2898), and appellant Levision contends that the court should have allotted twenty-seven acres of said tract to him, as successor of Martina Castro, and should have charged the same to the interest and share of respondent Maria L. Velasco, and that the court erred in not so doing.
The facts on this point are, briefly, these: In July, 1873, said Martina Castro and Petra Bernal de Castro (Martina being the daughter and Petra being the wife of Juan José Castro, one of the original tenants in common) made a mortgage of all their interest in the rancho to said respondent Velasco. At the date of this mortgage neither Martina nor Petra had any interest in the rancho, their interest having been exhausted prior to that time. (This last statement seems to be verified by the findings on the Juan José share and interest; at all events, the statement is made by counsel for respond *475 ent, and is not controverted by counsel for appellant.) In 1878, Mrs. Velasco commenced an action to foreclose the mortgage; but while the action was pending she dismissed it as against said Martina Castro, upon an agreement that Martina should convey to Velasco a specific parcel of three hundred acres, and that Velasco should reconvey to Martina, out of this parcel, a certain specific piece of twenty-seven acres, — the said twenty-seven acres being the tract here now in controversy. In pursuance of this agreement, deeds were interchanged between the parties at the same time, and as one transaction, no money consideration being paid by either. (Folio 2941.) Velasco got nothing through her deed from Martina of the three hundred acres, and, of course, conveyed back no title to the twenty-seven of that three hundred acres. The whole transaction was practically a nullity.
Velasco proceeded with her foreclosure suit against said Petra, and obtaining a decree, had all Petra’s interest in the rancho sold under it. Velasco became the purchaser at the sheriff’s sale, and under the sheriff’s deed she got possession of a small piece of land, not being a part of the three hundred acres or of the twenty-seven acres mentioned in the said deeds between said Velasco and said Martina. Upon this small piece of land, obtained under said sheriff’s deed as aforesaid, Velasco made valuable improvements. (Folios 293G, 2937.)
Several years after the above occurrences, viz., on September 7, 1885, Velasco purchased from the holders of an entirely different share, viz., the Alvarado share, an undivided eighty-acre interest in the rancho. (Folios 2492, 2493.) (This purchase was, in all probability, made in order that she might have some title to concentrate upon the small tract which she took possession of under the sheriff’s deed, and upon which she made her improvements, as she got no title thereto under said deed.) And now appellant contends that under the general *476 principle applied to sales of specific tracts by co-tenants of the whole rancho as stated in section 764 of the Code of Civil Procedure, this eighty-acre undivided interest thus afterwards acquired by Mrs. Velasco in 1885 should be applied to making good and filling the said deed for twent) seven acres made by her to Martina in 1879.
It is evident, however, — 1. That this contention of appellant does not bring him within the rule as stated in section 764; and 2. That it is entirely outside the equitable considerations upon which the principle contended for is founded. As Martina could not satisfy any part of her deed to Velasco for the three hundred acres, she (and her grantee) cannot be heard to demand satisfaction of the deed of a part of said three hundred acres which she at the same time received back from Velasco. It was the evident intention of the parties to the transaction that the one interest should be satisfied out of the other, and that the title which Velasco conveyed back to Martina was no other or greater than the title which Martina conveyed to Velasco; and it is the intent of the parties which controls a court of equity in working out fair and just results. To hold that, under these circumstances, Velasco, while getting nothing from the deed for three hundred acres, should be compelled to make good her return deed to Martina of apart of that three hundred acres, would be to hold just the reverse of that which is “ equitable, just, and proper." If the doctrine of estoppel be invoked, then each party would be es-topped by her own deed, and the one estoppel would neutralize the other. (Carpenter v. Thompson, 3 N. H. 204; 14 Am. Dec. 348; Kimball v. Schoff, 40 N. H. 190.)
Our.conclusion is, that the court below did not err in its disposition of said twenty-seven acres of specific tract 78. (The court did give a small fractional part of said twenty-seven acres to appellant; but as Velasco does not appeal from this part of the decree, the correctness of that ruling of the court is not before us.)
*477 IX. Appeal oe E. Kirkpatrick.
This appeal rests on the contention that the court erred in holding that the attempted record of a deed from James B. and Henry V. Alvarado to A. B. Patrick, dated December 6, 1879, did not impart constructive notice to McLaughlin, the grantor of respondents, who purchased the same land from the same grantors a few months later. (Folios 2452-2464, 2471-2475.) McLaughlin purchased for a stated sum .of money, which was the “full value” of the land; and at the time he purchased and recorded his deed he had “ no actual notice or knowledge, or notice or knowledge in fact,” of the said deed to Patrick, “ or of any fact, matter, or thing which might, could, would, or should put him on inquiry concerning the same,” but was “ wholly ignorant of said deed of conveyance.” No equities are shown in favor of .said Patrick; and the only question is, whether his attempted record of his deed must be held to be conclusive constructive notice to McLaughlin. We think that the court was right in holding that it did not impart such notice, on account of the insufficiency of the certificate of acknowledgment.
Section 1213 of the Civil Code provides that a conveyance of real property shall be constructive notice of its contents to subsequent purchasers, when it is acknowledged, or proved, “ and certified and recorded as prescribed by law.” Section 1170 provides that “ an instrument is deemed to be recorded when, being duly acknowledged or proved, and certified, it is deposited in the recorder’s office with the proper officer for record.” Section 1161 provides: “Before an instrument can be recorded, .... its execution must be acknowledged by the person executing it, .... or proved by a subscribing witness, .... and. the acknowledgment or proof certified in the manner prescribed by article 3 of this chapter.” In said article 3 it is provided that an acknowledgment may be made “ within the city, city and *478 county, county, or district for which the officer was elected or appointed ” before either of several officers, including a notary public. (See. 1181.) Said article also provides a form of a certificate of acknowledgment, which must be substantially followed, and indorsed on or attached to the instrument, and which requires that “the name and quality of the officer ” taking the acknowledgment must be in the certificate. (Secs. 1188, 1189.) It is also provided that “ officers taking and certifying acknowledgments .... must authenticate their certificates by affixing thereto their signatures, followed by the names of their offices; also, their seals of office,” if they are required to have seals. (Sec. 1193.)
Now, the certificate of acknowledgment to the said deed to Patrick commences as follows: “ State of California, City and County of San Francisco, ss. On this eighth day of December, A. D. 1879, before me, H. I. Tillotson, a notary public in and for said city and county.” It is signed “ H. I. Tillotson, Notary Public.” At the end of the certificate he says that he has hereunto “ affixed my official seal,” and he attaches a seal as follows: “ Seal. H. I. Tillotson, Notary Public, Contra Costa County.” The court finds that said Tillotson was not a notary public in and for said city and county of San Francisco, but was a notary in and for Contra Costa County, and that said grantors appeared before him in said last-named county, and there acknowledged said deed.
It is evident that the material statements in the certificate are not true. The acknowledgment was not taken in the county of San Francisco, and the notary was not a notary of that county. The “ name and quality of the officer taking the acknowledgment” was not “in the certificate,” as provided by sections 1188 and 1189 of the Civil Code; nor was the name of his office given as required by section 1193. A notary is an officer of the *479 county for which he has been appointed, and his proper official name is “notary public in and for” said county, and should appear somewhere in the certificate. (Willard v. Cramer, 36 Iowa, 22.) And if it be contended that a certificate, good on its face, is sufficient, although its material statements are false, — a dangerous doctrine,—still, it is evident that the certificate in this case is not sufficient on its face. It states that the acknowledgment was taken in the county of San Francisco, before a notary public of that county, who certifies that he attaches to it his notarial seal, while the seal, and the only seal, that is attached to it is the seal of a notary public of the county of Contra Costa, — a direct failure to comply with section'1193. And so a view from any stand-point shows that the ruling of the trial court should not be disturbed. There is nothing to induce a leaning against the correctness of that ruling.
X. Specific Tract Xo. 90.
It is contended by appellant Tewksbury that the court erred in allotting specific tract Xo. 90 to the grantees of William B. Fleming.
On January 5, 1857, J. M. Tewksbury and Martina Perez executed a bargain and sale deed to said Fleming, purporting to convey to the latter the whole of said tract Xo. 90 in fee (folio 3028); but it is contended that said deed should be held valueless because at its date said Tewksbury and Perez had no interests in the rancho, although they acquired such interests soon afterwards. It is contended by said appellant, at this particular point of her appeals, that J. M. Tewksbury acquired his earliest interest in the rancho on March 7th of the same year, through a deed to him made by said Fleming. It is to be noticed, however, that at the date of said deed to Fleming, Tewksbury had an apparent title — and claimed to have the legal title — to the Antonio Castro interest in the rancho, through the tax deed to C. P. Pollard, heretofore noticed in this opinion; and *480 that at said date said Martina Perez claimed to own the Joaquin Castro interest through the foreclosure of a mortgage and a sheriff's sale thereunder made to her March 11, 1856. (Folios 1660 et seq.) In the deed, the land — afterwards designated as specific tract No. 90 — is described as “ being a portion of lands set apart and allotted to certain parties named, as the sixth part in the partition proceedings of 1856, hereinbefore mentioned''; and the principal parties of the sixth part were Joaquin Castro and his wife, Trinidad Pacheco de Castro. (Folios 3900 et seq.)
The deed contains the following covenant: “And the said parties of the first part, for themselves, heirs, executors, and administrators, do hereby also covenant, promise, and agree to and with the said party of the second part, his heirs and assigns, that neither they nor Joaquin Castro, nor Trinidad Pacheco, his wife, certain parties named as parties of the sixth part in the above-mentioned deed of partition, have made, done, constituted, executed, or suffered any act or acts, thing or things, whatever, whereby or by means whereof the above-mentioned and described premises, or any part or parcel thereof, now are or at anytime hereafter shall or may be impeached, charged, or encumbered in any manner or in any way whatever.” Shortly afterwards, viz., on March 13, 1857, the said Fleming, having in the mean time become the owner of a certain undivided interest in the whole rancho, through a conveyance from Marcilla B. Bradley (folio 2580), executed and delivered to said J. M. Tewksbury, who accepted the same, a deed conveying to Tewksbury all Fleming’s title and interest in the rancho, “excepting and reserving from the operation of this deed all that lot of land in said rancho known and designated on said Gray’s map of said rancho as lot A, subdivision No. 109, containing 214 acres of land,”— being the said specific tract No. 90. (Folio 3050.)
It is quite clear that the intent was to convey a perfect *481 title to said specific tract No. 90 to said Fleming, and to insure the same; and in view of the circumstances, the appellant Tewksbury cannot now be heard to impeach said title. We see no error, therefore, in the disposition which the court below made of said specific tract No. 90.
XI. Appeals of Frank Webber et al.
These appeals are from the interlocutory decree, and from an order denying a new trial, and rest partly upon the record in transcript No. 13871. Appellants base their alleged rights in the rancho upon what is known as the “ lawyers’ title,” which was connected with, and to some extent arose out of, an attempt at a partition of the rancho made in 1856. But said attempted partition and said lawyers’ title were at full issue at the first trial in the district court. Evidence was introduced on the issues, and the court fully and clearly found and decided against the validity of both the partition and the said lawyers’ title, and that “ all subsequent acts and claims thereunder, or based thereon, were and are invalid and ineffective.” On the appeal these questions were elaborately argued by counsel; and this court considered them at great length in its opinion, and affirmed the decision of the lower court. It did this, not only in express terms when discussing these very questions, but also when adjudicating what had been “ correctly determined ” by the district court. (The findings of the district court were full on this point, and they are set forth in detail in 64 California, from page 569 to page 584.) We therefore consider the questions raised by these appeals about said “lawyers’ title” as having been definitely settled on the former appeal, and shall not again discuss them. Counsel for appellants suggests the point that the opinion of Mr. Justice Thornton, delivered on the former appeal, was not the decision of the court on these questions, because, as is contended, it was not concurred in by a majority of the justices; but the point is not tenable. That opinion *482 was expressly concurred in, as a whole, by Chief Justice Morrison and Justice Myrick; and Justice Ross also concurred, except as to the two questions upon which the opinion reverses the judgment. Justice Thornton’s opinion reverses the judgment for two reasons: 1. Because the findings as to certain taxes and judgments were deemed insufficient; and 2. Because, under section 760 of the Code of Civil Procedure, the court below should have determined the interests of all the parties to the action, as well as those of the original co-tenants. Justice Ross dissented upon these two points, and upon these alone, and held that the entire judgment of the court below should have been affirmed. He says: “ I dissent from the judgment, and am of the opinion that the interlocutory decree appealed from should be affirmed. Except with respect to the construction of section 760 of the Code of Civil Procedure, and to the findings in relation to taxes and judgments for taxes, I agree with the conclusions reached, and in much that is said in support of them in the opinion of Mr. Justice Thornton. I do not agree with the conclusions reached in the opinion, in regard to the findings just alluded to, nor am I able to agree with my associates in their construction of section 760 of the Code of Civil Procedure.” (64 Cal. 631.) There are therefore four justices expressly-concurring in the “ conclusions reached” as to the partition of 1856, and the “ lawyers’ title.” Moreover, Mr. Justice Sharp-stein concurs generally in the judgment, and in the conclusion “that the findings of the court below, with the exceptions specified by Mr. Justice Thornton, ought not to be disturbed”; and Mr. Justice McKee, in a separate opinion, concurs in the judgment, and makes additional arguments to the point that the interlocutory decree should have determined the rights of all the parties, but. does not dissent from any conclusion stated in the opinion of Mr. Justice Thornton.
2. These appellants contend, on their appeal from the *483 order denying a new trial, that the court erred in refusing to allow appellants to file amendments to their answers.
One of the grounds upon which the motion to make the amendments was resisted was unreasonable delay in 'presenting them; and we think that ground alone is abundantly sufficient to sustain the ruling of the court. The refusal of a trial court to allow an amendment to a pleading is not, per se, error. Such matters are within the discretion of the lower court, and this court will not interfere, when such discretion has not been clearly abused. We see no such abuse of discretion here. The facts in relation to this point are to be found in transcript 13871, from folio 373 to 441. The original answers of these appellants were filed in 1868 (folio 1), and the judgment of the district court was rendered in 1878. (Folio 369.)
After the decision of this court on appeal from said judgment of the district court, and the filing of the remittitur in the superior court, the cause came regularly on for trial on January 26, 1885. The proposed amendments to the answers were not presented until January 5, 1887. (Folios 373, 374.) It appears in the statement on motion for a new trial, as a fact stated, that in December, 1885, counsel for said appellants “suggested to the court that he desired to file amendments to the answer of said defendants, and was thereupon, and several times after-wards, urged by the court and opposing counsel to present such amendments to said answers seasonably, but did not present said amendments until the fifth day of January, 1887.” (Folio 426.) Moreover, it appears from the uncontradicted affidavit of Theodore H. Hittell, of counsel for respondents, which was filed in opposition to the motion to amend, that for more than six months last past he had made strenuous efforts to induce the said attorney for appellants to present their amendments; that said appellants “ made application after application *484 for delay and continuance, and thereby put off the final closing of the case much longer than it would have otherwise been put off”; that after several such continuances, the attorney for appellants appeared in court on September 23, 1886, and asked for a further continuance, stating again that he desired to file amendments to the answers, that the amendments were already drawn, and that he would serve and present the same for filing on or before October 1,1886; that “thereupon the court made an order, which was understood at the time to be peremptory and final as to such amendments, that they must and should be served and presented to the court on or before October 1, 1886.” (Folios 435 et seq.) The amendments, however, were not presented on said October 1st, nor until the next January, when, as stated in said affidavit of Hittell, the case “ had been declared substantially closed.” It appears, also, upon the face of the amendments themselves, that they had been prepared, subscribed by the attorney, and verified by the appellants on December 12, 1885; and there is no intimation of an excuse for the delay in presenting them. Under these circumstances, we cannot see upon what ground this court can be expected to hold that the court below abused its discretion by refusing to allow the amendments.
The foregoing is determinate of the point against the appellants; but we also think the other objection made by counsel for respondents to the proposed amendments were good; namely, that “the points raised by the proposed amendments had been already passed upon by the supreme court of this state upon the appeal hereinbefore taken,” and that “ said proposed amendments were not material amendments, and set up nothing not covered by the old pleadings.” (Folio 433.)
3. We also think that the court did not err in its rulings on the William Rehnert tax deeds. (Folios 441 et seq.) There was no sufficient proof introduced or of *485 fered to show that said Rohnert, as purchaser of property sold for delinquent taxes, gave notice to the owner or occupier of the property so purchased, as provided by section 3785 of the Political Code. Moreover, Relxnert was, at the time, a tenant in common of the rancho. (Folio 460.)
XII. Alleged Insufficiency of Findings and Decree.
There is some slight contention that the findings of fact and law, and the interlocutory decree, do not conclusively dispose of the issues of ownership, and that too much is left for the determination of the referees. We see no just ground for this criticism. The"findings and decree are remarkably full. They dispose of all questions of title and ownership; and the referees are simply to determine values, and make partition among the owners as declared and directed by the court. Of course, in this case, owing to the multitude of owners, the referees will have an arduous work to perform; but their powers are not beyond those contemplated by the code, and are necessary to a practicable consummation of the partition.
Conclusion.
There are a few respondents, and perhaps one or two appellants, who have not been expressly mentioned in this opinion; but their contentions are involved in and determined by the views and conclusions hereinbefore stated. It is our opinion that the interlocutory decree, as an entirety, and all orders denying a new trial, should be affirmed.
It is ordered that in this present case, No. 13276, the judgment and interlocutory decree, and every part thereof, be, and the same are, hereby affirmed; and with respect to the other cases, viz., Emeric v. Alvarado et al., No. 13275, Flood v. Alvarado, No. 13871, Flood v. Alvarado et al., No. 13984, and Flood v. Alvarado et al., No. 14006, it is hereby directed that an order be entered in *486 each of said cases affirming the judgment and interlocutory decree, and every part thereof, and also affirming the order denying a new tr.al in each case in which there is an appeal from such order.
Garoutte, J., Sharpstein, J., Paterson, J., and De Haven, J., concurred.
. Harrison, J., being disqualified, did not participate.