[Civ. No. 518. Third Appellate District.—December 31, 1908.]

## GEORGIE E. CROZER, Appellant, v. W. P. WHITE et al., Respondents.

DEED—INDEFINITE DESCRIPTION OF LAND—PAROL EVIDENCE TO REMOVE AMBIGUITY AND MAKE DESCRIPTION DEFINITE.—When a deed contains an indefinite description of the land granted, describing it generally, as "all the right, title and interest and claim" of the grantor "to that lot, piece and parcel of land situate and being" in a specified county, section, township and range, "it being my dwelling-house and lands appurtenant thereto, together with all and singular the tenements, hereditaments and appurtenances," etc., parol evidence is admissible to explain and remove the ambiguity, whether it be considered patent or latent, and to make the description definite as to the quantity of land conveyed.

ID.—DEGREE OF PROOF REQUIRED.—The parol testimony to remove the ambiguity should be so clear and convincing as to put beyond dispute or reasonable doubt the exact meaning and intention of the grantor in using the language in the deed as to which the ambiguity arises.

ID.—SUFFICIENCY OF PAROL EVIDENCE—DEFINITE ACREAGE—FARMING COMMUNITY—"HOME PLACE" OF GRANTOR—INTENTION TOWARD GRANTEE.—Parol evidence showing that the dwelling and land conveyed were situated in a farming community; that the dwelling stood in the center of a farming tract owned by the grantor, which constituted his "home place," and was the only land belonging to him in the county and section described in the deed, and comprised a farm of one hundred and ten acres; that the farmhouse was practically valueless as a residence apart from the farm tract and out-buildings; that the grantor was the brother of the grantee, and was largely indebted to him, and had declared his intention to make his brother the owner of his "home place"; and that his brother "had a better right to it than anyone else"—is sufficient, in connection with the language of the deed, to show that it was the intention of the grantor to convey to the grantee the whole of "that lot, piece and parcel of land" belonging to the grantor in the county and section described.

ID.—PRESUMPTION FROM GRANT.—One who grants a thing is presumed to grant also what is essential to its beneficial use; and everything essential to the beneficial use and enjoyment of the property designated is, in the absence of language indicating a different intention on the part of the grantor, to be considered as passing to the grantee.

ID.—DELIVERY OF DEED—DIRECTION OF GRANTOR TO NOTARY—LOSS OF DOMINION BY GRANTOR—TITLE OF GRANTEE.—When it appears that

a notary accidentally met by the grantor and grantee was at the place of business of the grantor to draw the deed, which was there drafted, executed and acknowledged, and the notary had to take it to his office to have the seal attached, and was directed by the grantor to deliver the deed to the grantee, all dominion of the grantor over the same was thereby relinquished, and the title passed absolutely to the grantee, though the deed, through the forgetfulness of the notary, was not actually delivered by him to the grantee until after the death of the grantor.

APPEAL from an order of the Superior Court of Mendocino County denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

Dudley Kinsell, for Appellant.

Weldon & Held, and E. M. Frost, for W. P. White, Respondent.

Thomas, Pemberton & Thomas, for John S. Rohrbough, Respondent.

HART, J.—The plaintiff brought this suit to quiet her title to certain real property, of which she alleged her ownership in fee, situated in Mendocino county, embracing one hundred and ten acres of land "and being a part of the N. W. ¼ of section 18, Township 22 N., R. 12 W., M. D. B. & M."

The defendant, W. P. White, answering the complaint, denies that plaintiff "is now, or that she was at the time of the commencement of this action, the owner in fee of all or any part of that real property" described by metes and bounds in the complaint, and sets up ownership thereof in himself, alleging "he is now, and has been at all times since the tenth day of August, 1901, the owner in fee" of said land.

The defendant Rohrbough alleges in his answer that he has a leasehold interest in said land as tenant under the terms of a certain written lease, "made on the fifteenth day of April, 1900, in which the then owner of the premises described in plaintiff's complaint, George E. White, was the lessor, and this defendant became and was made a lessee of said premises for the term of ten years from and after the said fifteenth day of April, 1900; and that under said lease

this defendant entered into the possession of the premises and has remained in possession thereof ever since as such tenant and not otherwise."

The court's findings from the evidence were in favor of the defendants, to whom, accordingly, judgment was awarded, quieting their respective titles to the land in controversy.

This appeal is from the order denying the plaintiff a new trial.

The appellant contends that the evidence does not justify the findings of the court in favor of the defendant White's ownership of the land in dispute and against the plaintiff's ownership thereof, and in support of this contention presents and urges four different and distinct propositions, among which are the following: 1. That the description in the deed from George E. White to the defendant, W. P. White, is wholly insufficient to identify the land therein and thereby sought to be conveyed with the land described in the complaint, and that the deed is, therefore, void for want of definite description; 2. That there is no evidence to show a delivery of said deed from George E. White to the defendant, W. P. White, either actual or constructive.

The remaining propositions need not be particularly noticed.

The land in dispute was the separate property of said George E. White in his lifetime, and so far as any public record shows to the contrary, remained so up to the time of his death, which occurred on June 9, 1902. Upon the administration of the estate of said White, the court, sitting in probate, set aside this land for a limited time to his widow, Louise B. White, and later the said court determined that said Louise B. White and the plaintiff herein were the only heirs of said George E. White and decreed a distribution of said premises to said heirs, subject to the limited homestead to Louise B. White. From the testimony of the witness, Benjamin Blockburger, a notary public, residing at Blocksburg, Humboldt county, it appears that, on August 10, 1901, the witness and George E. White met by accident on the public highway, at or near the "shearing corral" of the deceased, known as "Nefus Peak"; that White said to Blockburger that he (White) desired to deed the premises concerned here to his brother, W. P. White; that thereupon Blockburger, having with him several blank sheets of foolscap paper and a pen and a bottle of ink, prepared a deed, under

the instructions of said George E. White, conveying the premises, for a named consideration of one hundred dollars, to said W. P. White; that after George E. signed and acknowledged the deed, Blockburger stated that he would have to take the instrument to his office in order to attach his notarial seal thereto, and then asked George E. "if he wanted me to forward the deed for record"; that White in reply said, "No, give it to Pit," referring to W. P. White. Blockburger, it seems, never informed W. P. White nor any other person that George E. White executed said deed or that he (Blockburger) had the same in his possession until long after the death of George E. In fact, Blockburger testified that he had entirely forgotten about the deed and the grantor's instructions with reference thereto, and did not recall the transaction or the instructions of the grantor until sometime subsequently to the death of George E. White and after the conclusion of certain litigation, to which W. P. White was a party, over the estate of George E. in the probate court.

The foregoing, while not presenting in substance all the facts brought out at the trial, involves a statement thereof sufficient for the purposes of the consideration of the only points which, in our opinion, it is necessary to examine.

The deed in question grants, sells and forever quitclaims to said W. P. White "all the right, title and interest and claim of" said grantor, "to that lot, piece and parcel of land situate and being in the County of Mendocino, State of California, bounded and described as follows: Being a portion of section 18, Township 22 North Range 12 West, Mount Diablo Meridian, it being my dwelling-house and lands apertant thereto—Together with all and singular the Tenements, hereditaments and appurtenances thereunto of the said premises," etc.

The land described in the complaint comprises, it will be observed, one hundred and ten acres, and is situated in the same section, township and range as is the land described in the said deed. The latter, however, while specifically designating the "dwelling-house" and adding "land apertant (appurtenant) thereto," does not declare the number of acres which it was the intention of the grantor to convey. From the face of the deed itself it is manifestly impossible to determine with absolute certainty whether the land to be conveyed with the dwelling consists of one acre or more or

less or of the entire one hundred and ten acres, in about the center of which, so the witness Rohrbough states, said dwelling is situated.

It is thus to be seen that the description contained in the deed is indefinite, in that the exact number of acres which it was the intention of the grantor to convey is not designated therein. Upon the theory, therefore, that the uncertainty so arising involves an ambiguity which it was proper to explain by parol testimony, the court, over the objection of appellant, allowed evidence to be introduced for the purpose of showing that the intention of the grantor was to convey the whole of the one hundred and ten acres described in the complaint.

Counsel for the appellant contends that the court committed prejudicial error by permitting parol or testimony extrinsic to the deed to be received for the purpose of explaining the ambiguity therein, for the reason, as he asserts, that said ambiguity is patent and not latent, and that parol testimony is never admissible for the purpose of explaining a patent ambiguity. We think the court's ruling admitting the evidence to determine the number of acres intended to be conveyed by George E. White is unassailable. It has been held that, ''while parol evidence is not admissible to add to, contradict or vary a writing, yet it is admissible to explain an ambiguity, whether latent or patent.'' (*Shore* v. *Miller,* 80 Ga. 93, [12 Am. St. Rep. 239, 4 S. E. 561]; *Cottingham* v. *Hill,* 119 Ala. 353, [72 Am. St. Rep. 923, 24 South. 552]; *Borchard* v. *Eastwood* (Cal.), 65 Pac. 1047; 2 Devlin on Deeds, 2d ed., sec. 1012; *McCullough* v. *Olds,* 108 Cal. 529, [41 Pac. 420]; *Rea* v. *Haffenden,* 116 Cal. 603, 148 Pac. 716].) The evidence was admitted here, obviously, for the purpose of making definite the only element wanting in the deed to render *it* definite, to wit: The number of acres or the quantity of the tract of land owned by the grantor in the section and township mentioned as among the descriptive words of the deed he thereby intended to convey—that is, whether all of said tract or only a portion thereof. The object in receiving the testimony, in other words, was not to correct an insufficient description, but to ascertain how much of a tract of land correctly described in the deed it was the intention of the grantor to thereby convey. The sole question, then, to be determined by such evidence was,

What is the quantity of land to which the dwelling-house mentioned in the deed is appurtenant? Or, in other words, in view of the testimony that the one hundred and ten acres described in the complaint comprised all the land in the township designated in the deed as well as in the complaint owned by the grantor at the time he executed the deed, did George E. White intend to convey to his brother all said land or only a portion thereof?

It is clear that, while the deed is not expressed in strictly proper or precise legal terminology, the land intended to be conveyed was all that to which the dwelling-house was understood by the grantor to be appurtenant—that is, so much of all the land upon which the dwelling stood as said dwelling-house is essentially appurtenant to, considering the nature of the purposes for which the same could with advantage be used.

The witness Rohrbough testified that the one hundred and ten acres, on which the dwelling-house mentioned in the deed is located, comprised all the land owned by George E. White in the north half of section 18, township 22, etc., and that said dwelling stands "almost in the center—that is, equally distant from the line, the northwest line, and almost the same distance from the north half." He stated that said land was known as the "White homestead." He further testified: "There are fences around this dwelling-house. On the south there is a private roadway leading out to the county road and there is a fence around the dwelling-house, a yard fence. The garden and orchard is in front across the private road, and is not within the inclosure around the dwelling-house. There is a portion of the yard where the fence met in the rear of the dwelling-house, a low building about seventy feet long which really includes the yard, and the fences come up to that so as to make a complete inclosure. There is probably a little over an acre so inclosed, about two hundred feet, not to exceed two hundred and fifty feet, square and there are fences all around so that it is entirely inclosed. . . . All the buildings and barns are outside this inclosure— another building, a granary, and two or three barns and sheds—quite a number of buildings." Rohrbough also testified that he had a lease of the one hundred and ten acres of land referred to from George E. White; that he had, as such lessee, the use of the barns, granary and other out-

houses; that George E. White resided in the dwelling-house mentioned up to the time of his death; that the granary, barns, etc., were used in connection with said dwelling.

W. P. White testified that his brother, "in parables," often told him that he (W. P.) would get the "home place." He did not explain how or in what manner the "parables" were expressed by George E. White, but from them he clearly understood that he was to get his brother's homestead upon the latter's death. He further said that George E. White was indebted to him to the extent of $8,000 or $10,000—the exact amount he could not recall.

Blockburger testified that he met George E. White on the public highway on the day the deed was prepared, as heretofore related; that White said to the witness that he desired to give the home place (referring to the land in question) to his brother, W. P. White, remarking at the same time that "W. P. had a better right to it than anybody else."

The testimony thus presented constitutes in substance all the proof received upon the point under consideration.

Evidence admitted for the purpose of clearing up an ambiguity in a written instrument should, of course, have the effect of fully accomplishing such purpose. Its object is to render absolutely clear that which before was not clear and, therefore, not capable of intelligent or definite apprehension. Such testimony should, in other words, be so clear and convincing as to put beyond dispute or all reasonable doubt the exact meaning and intention a party designs to convey and express by the use of the language in the instrument as to which the ambiguity arises. We think that the testimony here meets the criterion suggested.

The testimony shows that the land described in the complaint and sought to be described in the deed is located in a farming community, and was the homestead and residence of George E. White. It had always been devoted in its use to agricultural, horticultural and stock-raising pursuits, and was useful for no other purpose. The dwelling mentioned in the deed stood approximately in the center of this, the only tract of land owned by the deceased in the section and township designated in the complaint and in the deed. There was no subdivision of the tract into separate and distinct lots and parcels. It is true that a fence had been erected inclosing about one acre of the land immediately surrounding

the dwelling, but the barns and other outhouses and the orchard, which the witness Rohrbough stated had always been used in connection with the house, were outside said inclosure. Besides, some of the witnesses testified that George E. White had declared to them that, upon his death, his brother, the grantee, would receive this particular tract of land, because he was entitled to, it as against all other persons who might be interested. Moreover, the deed, as we have seen, grants to the grantee all the right, title and claim of the grantee to *"that* lot, piece and parcel of land . . . being a portion of section 18, township 22, north, range 12 west, M. D. M." In the light of the testimony to the effect that the grantor owned but one "lot, piece and parcel" of land in said section and township, and that a comparatively small tract, what other reasonable interpretation from the language of the deed itself could be placed upon his intention as to the quantity to be conveyed than that he meant to transfer to his brother the whole tract? He refers to the land in his deed as *"that* lot, piece and parcel," and it would seem that if he had intended to convey anything less than the one hundred and ten acres constituting all the land he owned in said township he would have so indicated by appropriate language or by language reasonably and fairly indicating such intention. The use of the word "that," as indicated, would at least ordinarily be accepted as referring to a specific lot or tract of land consisting of a definite number of acres. We think that such is the reasonable interpretation of the language of the deed, considered in connection with the testimony, and that it thus appears sufficiently clear and certain that the grantor intended to convey to W. P. White nothing less than the full one hundred and ten acres of land, to which the dwelling mentioned in said deed appears, from all the circumstances, to be appurtenant. The house without all the land, as we understand the evidence as to the situation of the latter and the purposes to which it is adapted, would be practically valueless for any purpose, except merely as a place of shelter. It appears to be situated remote from any urban community, or from any other object which would render it convenient or profitable as a mere residence or place of abode. The only use to which it can be devoted, as before declared, is for the purposes to which the entire tract

of land is adapted, and those are the only purposes for which it had ever been used. Our Civil Code (section 3522) declares that one who grants a thing is presumed to grant also whatever is essential to its use. And in the case of *Sparks* v. *Hess,* 15 Cal. 195, 196 (approved in the case of *McShane* v. *Carter,* 80 Cal. 315, [22 Pac. 179]), it is said: "The true doctrine we conceive to be this: that everything essential to the beneficial use and enjoyment of the property designated is, in the absence of language indicating a different intention on the part of the grantor, to be considered as passing to the grantee, or, as observed by Mr. Justice Story, in *Whitney* v. *Olney,* 3 Mason, 280, [Fed. Cas. No. 17,595], the good sense of the doctrine on this subject is, that under the grant of a thing, whatever is parcel of it, or of the essence of it, or necessary to its beneficial use and enjoyment, or in common intendment is included in it, passes to the grantee. In that case, Mr. Story held that by the devise of a mill and its appurtenances— not the buildings merely, but all the land under the mill and necessary for the use of it passed to the devisees."

The cases cited by appellant, to wit: *Lick* v. *O'Donnell,* 3 Cal. 59, [58 Am. Dec. 383]; *Schenk* v. *Evoy,* 24 Cal. 105; *Grogan* v. *Vache,* 45 Cal. 611; *Emeric* v. *Alvarado,* 90 Cal. 444, [27 Pac. 356], and *Adams* v. *Hopkins,* 144 Cal. 41, [77 Pac. 712], have been carefully examined, and we think have no application to the case at bar.

The second point urged by appellant, that there was not, in law, a delivery of the deed, is without substantial merit. Blockburger, to whom the deed was delivered by the grantor with explicit instructions that he deliver it to the grantee, testified: "I considered that my instructions were to deliver the instrument at the first opportunity, or when it was called for. I was not instructed to hold it. . . . " He further testified that he thought he had delivered the deed to W. P. White when he gave the latter "the bundle of papers, which was soon after this paper was executed." This witness, in reply to a direct question as to whether the grantor had instructed him to deliver the deed to W. P. White, declared that he (the grantor) did so instruct him.

Thus the uncontradicted testimony clearly shows that the grantor, on placing the deed in the hands of Blockburger, with a request that he deliver it to the grantee, intended to

and did part with all dominion and control over the instrument. There is absolutely nothing to be found in Blockburger's testimony tending to show that the deceased, when handing the deed to the former with instructions that it be delivered to W. P. White, did so with any qualifications or conditions, or with any intent to recall the instrument before delivery. Blockburger's failure to deliver the deed to the grantee was due entirely to a mistake or inattention or carelessness on his part. It was no fault of the grantor that the deed was not delivered immediately or within a short time after its execution. Blockburger thought he had in fact delivered it to the grantee soon after he was given possession of it for that purpose. He had the custody of papers belonging to each of the parties to the deed, and kept the papers of each in separate and distinct packages, but through inadvertence placed the deed among the papers of the grantor; or otherwise, he says, the deed would have been delivered to the grantee soon after it was executed.

We think that it is well settled in this state that where a grantor has placed the deed in the hands of a third party, with instructions to deliver it to the grantee, even where the same is to be delivered after the death of the grantor, if there be nothing to indicate an intention on the part of the grantor to recall the same, such deed has then passed beyond the control of the grantor for all time. Manifestly, the question must be determined by the grantor's intention in the matter, and is one of fact to be solved by the light of all the circumstances surrounding the transaction. (*Bury* v. *Young,* 98 Cal. 451, [35 Am. St. Rep. 186, 33 Pac. 338] ; *Wittenbrock* v. *Cass,* 110 Cal. 1, [42 Pac. 300].) The circumstances here clearly indicate a perfect delivery.

The other questions urged—that of estoppel and that the deed is void because the wife of the grantor did not join in its execution—are not, as stated, of sufficient importance to demand special consideration.

The testimony shows without contradiction that Rohrbough, as is alleged in his answer, holds a written lease of the land described in the complaint for a period of ten years, and that the time provided by said lease has not expired. Our attention has been called to nothing in the record authorizing a disturbance of the order as to said defendant.

For the reasons stated herein, the order appealed from is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 1, 1909.