[Civ. No. 3288. Third Appellate District.—August 13, 1927.]

MINNIE MERKLE, Respondent, v. CARL F. MERKLE et al., Defendants; MICHAEL BIERWAGEN et al., Interveners and Appellants.

John T. Hennessy and Lynne Kelly for Appellants.

Lee Gebhart for Respondent.

HART, J.—The plaintiff brought this action to secure a decree reforming and correcting a certain deed, purporting to convey to her certain real property situated in the county of Nevada. Elizabeth Bierwagen, the owner and purported grantor of said property, was the mother of the plaintiff.

The amended complaint (verified) alleges that, on or about the eighth day of January, 1923, the said Elizabeth Bierwagen died in the county of Nevada, and that Carl F. Merkle and Christian Bierwagen "have been, and they are now, the duly appointed, qualified, and acting executors of the last will and testament of said decedent"; that in the year 1911, Elizabeth Bierwagen, deceased (to be hereinafter referred to as "deceased") entered into an agreement with plaintiff, whereby she promised and agreed that if plaintiff and her husband, Carl F. Merkle (one of the defendants herein), would care for the real property then owned by deceased, and care for, nurse, and protect her (deceased) during the remainder of her lifetime, the latter would convey to plaintiff herein the real property hereinafter de-

scribed, which said real property was then owned by said deceased. The complaint proceeds:

"That subsequently, and on or about the —— day of December, 1915, the said Elizabeth Bierwagen, deceased, further agreed to and with this plaintiff that if she, the said plaintiff and Carl F. Merkle, her husband, one of the defendants herein, in consideration for what work, labor and services they had theretofore performed for the said decedent in caring for her real property, and in the caring for said decedent personally, and in addition thereto, that if they would use, lay out and expend money sufficient to repair the dwelling house upon said premises, and would care for and protect the said decedent during the remainder of her life time, that she, the said decedent, would then and there convey to said plaintiff, Minnie Merkle, all of the said real property by deed.

"That the said plaintiff herein, in pursuance of said agreement above set forth, did during the years 1915 and 1916, pay, use, lay out and expend a large sum of money, to-wit: more than two thousand ($2000.00) dollars of moneys belonging to this plaintiff and Carl F. Merkle, her husband, one of the defendants herein, in rebuilding, repairing and putting in proper condition the said dwelling house upon said premises, and did care for, assist and protect the said decedent during the remainder of her lifetime.

"That on the 7th day of February, 1916, the said decedent made and executed a certain deed, of which the following is a copy:

" 'This indenture, made this twenty-second day of December, A. D. 1915,

" 'Between Mrs. Elizabeth Bierwagen, Chicago Park, Nevada County, California, the party of the first part, and Mrs. Minnie Merkle, Chicago Park, Nevada County California, the party of the second part;

" 'Witnesseth: That the said party of the first part, for and in consideration of the sum of Ten 00/100 dollars, in gold coin of the United States of America, to me in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, do by these presents grant, bargain, sell, convey and confirm unto the said party of the second part, and to her heirs and assigns forever, all those certain lots, pieces or parcels of land situate, lying and

being in the County of Nevada, State of California, and bounded and particularly described as follows, to wit: South East one fourth ($\frac{1}{4}$) of the southeast one fourth ($\frac{1}{4}$) of the northeast one fourth ($\frac{1}{4}$) and the northeast one fourth ($\frac{1}{4}$) of the northeast one fourth ($\frac{1}{4}$) of the southeast one fourth ($\frac{1}{4}$) situated in Chicago Park, Nevada County, California, containing twenty (20) acres.' . . . ''

Said deed was signed by the deceased and duly acknowledged and recorded in the office of the county recorder of Nevada County on the twenty-fifth day of December, 1923.

The amended complaint proceeds, paragraph seven: ·

''That at the time of the execution of said deed and the delivering of the same to the said Elizabeth Bierwagen, it was the intention and the purpose of Elizabeth Bierwagen, to convey to this plaintiff the following described premises, to-wit:

''South East one fourth (SE$\frac{1}{4}$) of the southeast one fourth (SE$\frac{1}{4}$) of the northeast one fourth (NE$\frac{1}{4}$) and the northeast one fourth (NE$\frac{1}{4}$) of the northeast one fourth (NE$\frac{1}{4}$) of the southeast one fourth (SE$\frac{1}{4}$) of Section Sixteen (16) Township Fifteen (15) North Range Nine (9) East Mt. Diablo Base and Meridian, situated in Nevada County, State of California, containing twenty (20) acres.

''That it was the intention and purpose of said Elizabeth Bierwagen, deceased, to insert in said deed the description of said premises in this paragraph above described, and to insert the description as above set forth in said deed. The said description contained in said deed as actually executed does not express or incorporate the purpose and intention of the said grantor therein; that said grantor thought and believed when she executed said deed that the deed contained the description of the property in this paragraph described; that by a mistake on the part of said grantor the description contained in said deed. actually executed does not set forth or describe the section, township or range in which the said real property is situated, and also the said description, by a mistake on the part of said grantor, states that said property is in Chicago Park; that said property was, and is, not situated in Chicago Park; that the only real property owned by said grantor at the time said deed was executed was the real property in this paragraph de-

scribed, and the said grantor intended to convey to plaintiff by said deed the said real property.

"That the said omission on the part of the grantor to insert the said Section 16, township 15 north, range 9 east, Mt. Diablo Base and Meridian in said deed above set forth was not discovered by this plaintiff until the —— day of December, 1923.

"That this plaintiff has performed all of the obligations on her part to be performed, and has paid to said decedent for said premises the consideration expressed in said deed, and other considerations as well."

It was stipulated by the parties that the answer of the defendants (executors of the estate of deceased) to the original complaint might stand as the answer to the complaint as amended, and in said answer they allege "that the knowledge, information and belief of defendants upon and as to the facts alleged in plaintiff's complaint are such as to preclude defendants from denying, under oath, the allegations of said complaint; allege that the defendants are unwilling to deny, either of their own knowledge, or upon their information or belief, the allegations of plaintiff's complaint herein."

It was also stipulated that the complaint in intervention and the answer of interveners to the original complaint might stand in the same relation to the amended complaint. The averments and denials are numerous, and we will, therefore, state in a general way what they contain. The following averments of the complaint are denied: That plaintiff executed the deed as originally framed, as shown by the complaint, or intended to execute the deed as reformed by the decree of the court; that deceased intended to convey the real property in question to the plaintiff and her husband; that deceased made the agreement with the plaintiff and her husband, as alleged in the complaint; that (upon information and belief) the discovery by plaintiff of the omission to describe the property correctly in the deed was not until December, 1923; that the deed was delivered to plaintiff, and that the plaintiff and her husband paid or performed the consideration for said deed as averred in the complaint. It is alleged that deceased, at her death, left no surviving husband, but that there survived her, upon the happening of that event, ten children, the plaintiff

and the five interveners being of that number; that said interveners, ever since the death of deceased, have been and are the owners and entitled to the possession and are in the possession of an undivided five-elevenths interest in and to the property in controversy; that plaintiff has no estate, interest, right, or title whatever in and to said five-elevenths interest, part or share in and to "all of said above described property" (naming the real property in dispute); allege (upon information and belief) that the purported deed referred to in the complaint does not bear the signature of the deceased; that the "plaintiff claims and asserts an interest in, or the ownership of, the whole of said five-elevenths interest, adverse to said interveners," and that said claim is without right; that deceased "never conveyed the above described property (meaning the real property in question), nor any part or portion thereof, to said plaintiff, nor to any other person," but up to the time of her death, was the owner, in possession and entitled to the possession of all said property; that, on the thirteenth day of February, 1923, the superior court in and for the county of Nevada, in the matter of the estate of deceased, made an order admitting to probate a writing, dated June 1, 1917, purporting to be the last will and testament of the deceased, and appointed said defendants, Carl F. Merkle and Christian Bierwagen, executors of said purported will, and that they duly qualified as such executors and entered upon the discharge of the duties of their said office, and ever since have acted as such executors; that the real property involved herein "was not disposed of by said will"; that (lastly) "the complaint does not state facts sufficient to constitute a cause of action." The prayer of the complaint in intervention and answer to the amended complaint is that plaintiff be required to expose the nature of her claim, and that all adverse claims of·plaintiff and the interveners, and each of them, be determined by a decree of the court, and also that interveners be adjudged the owners of an undivided five-elevenths interest or estate in and to all the real property referred to in the complaint; that plaintiff has no interest of any kind whatever in said five-elevenths interest in said real property, and she, her agents, successors, and assigns be forever debarred from asserting or claiming any

interest in or title to said undivided five-elevenths interest in said property, etc.

The trial of the cause was by the court sitting without a jury.

The findings are substantially in the language of the complaint, except as to the allegations of the complaint in intervention, which would, if found to be sustained by the proofs, entitle the intervenors to a judgment establishing their asserted interest in the said property, which allegations the court found were untrue. Judgment passed for the plaintiff in accord with said findings, decreeing a revision of the deed in accord with the correct description of the property as given in the amended complaint.

The interveners moved for an order vacating the judgment on certain specified grounds, and also for a new trial. Both motions were denied, and the interveners appeal from the judgment and the orders denying said motions.

The assault upon the judgment presents the question whether the material findings do or do not derive sufficient support from the evidence to uphold them. This general proposition involves these questions, to wit: 1. Did the deceased make the agreement with the plaintiff and her husband, as said agreement is set forth in the complaint? 2. If so, did the plaintiff and her husband perform the agreement upon their part to be performed? 3. Did the deceased, in and when making the deed set out in the amended complaint, intend to describe therein and so convey to the plaintiff the real property, consisting of twenty acres, upon which she had for many years resided and was residing when said deed was prepared and signed by her, and which property is described in the seventh paragraph of the amended complaint? 4. Was there, legally, a delivery of the deed to the plaintiff? In addition to these propositions there are some others involving an attack upon rulings by the court with respect to the admissibility of certain testimony.

The several points above stated are so far correlated that a statement of the facts of the series of transactions eventuating in the present litigation will, from the nature of the situation, embrace the particular facts by the light of which we are to be guided in the consideration and determination of each of said points.

It appears that the real property in controversy was acquired, with another and different tract of land, by Ludwig Bierwagen, the husband of the deceased, on the twenty-fifth day of September, 1902, from one Mabel Briot; that the two tracts of land, each of which consisted of twenty acres, were conveyed by said Briot to said Ludwig by means of a single instrument or deed; that the husband of the deceased passed out of this life either on the seventh or the eighth day of January, 1903; that his wife (the deceased) succeeded to the ownership of both tracts of twenty acres each, and during all her years, from the date of the acquisition of said property by her husband, resided on the twenty acres here in controversy. At the time of the death of her husband, the deceased was about sixty-nine years of age. In the early part of April, 1904, the plaintiff, who was a daughter of the deceased, and Carl F. Merkle, intermarried. From the fourth day of April, 1904 (as will be noted, subsequent to the death of the deceased's husband), up to the date of the death of deceased, the plaintiff and her husband resided with deceased on the premises and in the house involved in this litigation. Merkle assisted in taking care of the place—attending to the cows and looking after and caring for such fruit crops as were produced on the premises—and the plaintiff assisted in the house work. Merkle had entire charge of the work on the premises from 1904 until and including the year 1909. From the last named year, Christian Bierwagen, a son of the deceased and a brother of the plaintiff, had charge and took care of the premises and continued in that capacity until the year 1911, Merkle, however, continuing to reside at the home of deceased and assisting Christian in such work or labor, as was required to be done on the premises. This situation continued until the year 1911. In the meantime the health of the deceased began to fail. In fact (Merkle testified, as did his wife and other members of the family) that the deceased was ill much of the time from and after the time the Merkles went to the premises to reside with the former. By the year 1911, the deceased had become so enfeebled, physically, by reason of illness and her venerable years, that she became incapacitated for the performance of any kind of labor. In the year just mentioned, the deceased, realizing that her physical condition was such that she

could not take care of herself or her property, proposed to her son, Christian, that if he would assume and discharge that responsibility during the remainder of her life she would give the property to him (Christian), the transfer to take effect upon her death. This proposition, which was made in the presence and hearing of plaintiff, her husband and Miss Elizabeth Bierwagen, daughter of the deceased, Christian declined to accept, saying that, while he could take proper care of the ranch, he, being a single man (meaning that he was unmarried), was himself incapable of giving his mother the personal care and attention which her physical condition and advanced age required. Thereupon the deceased made a like proposition to the plaintiff— that is, that if plaintiff and her husband would remain at her house and take care of her and attend to the affairs of the ranch during the remainder of her life, she (deceased) would give the ranch and her home to plaintiff, the latter, however, upon receiving the property upon the deceased's death to pay to the latter's son, Christian, and her daughter, Elizabeth, the sum of fifteen hundred dollars each. After some reflection the plaintiff and her husband accepted the proposition, and from that time until the passing of the deceased the Merkles continuously remained on the ranch of the deceased, the husband, as above stated, giving his entire time and attention to the work required to be done on the premises, and the plaintiff attending to the domestic affairs of the home and the personal needs of her mother.

██ It appears that, on the fifth day of June, 1911, the deceased attempted to execute a last will and testament, whereby she sought to make a testamentary disposition of her estate. This document or paper was signed by her, and, following her subscription thereto, was her acknowledgment before a notary public that she executed the same. There were no attesting witnesses to the instrument, a formality essential to the validity of every last will, except a holographic and a nuncupative will. (Civ. Code, secs. 1276, 1277, 1288.) Furthermore, the property was not correctly described therein. By this purported will the deceased undertook to devise to plaintiff the real property in dispute with the proviso that the plaintiff should pay to her son, Christian, and her daughter, Elizabeth, the sum of fifteen hundred dollars each.

It further appears that the house situated on the real property in question, and which had been occupied as a residence by deceased from the time her husband acquired the property until her death, and in which plaintiff and her husband, with the deceased, resided under the agreement referred to, was an old structure—in fact, an old building at the time of the purchase of the premises by the husband of the deceased—and had, by the winter of 1914 and 1915, become so dilapidated that it was necessary to repair it to make it a suitable or a reasonably comfortable place in which to live. During the winter mentioned—whether the latter part of December, 1914, or the first part of January, 1915, is not definitely shown—a portion of the roof of the house was blown off by the wind. This circumstance brought up a conversation at that time between the deceased and the plaintiff and her husband with regard to the matter of repairing the house and thereby putting it in a condition for comfortable use as a dwelling-house. In that conversation the deceased declared to the plaintiff and her husband that ''she had no money on hand and would spend no money any more to rebuild, because,'' testified plaintiff's husband, ''she didn't know how long she would have the use of it, and after her demise the property would belong to us anyway, so we should fix it to suit ourselves and pay the expenses.'' Deceased, either on the occasion of which we are now speaking or a short time thereafter, stated that, if the Merkles made the repairs, which were necessary to put the house in proper condition, she would give them a deed to the premises ''for security's sake, in case something should turn up that there would be disharmony or trouble with the will, so we would have the deed anyway, and be safe for the money that we have invested in it.'' (Carl Merkle's testimony.) The Merkles agreed to repair the house and did so at an expense to themselves of approximately three thousand dollars.

In the latter part of the year 1915—in the fall of that year (thought the witness Miss Elizabeth Bierwagen)—the deceased said to Miss Elizabeth and Carl Merkle that she (deceased) desired to make a deed, conveying the real property in question to the plaintiff and requested Carl to call at the office of C. H. Barker, a notary public at Grass Valley, in Nevada County, and instruct him to prepare such

deed. Within a few days thereafter Carl called at Barker's office and informed the latter of the wishes of the deceased regarding the preparation of a deed to the property in dispute. Barker called for a description of the property to be inserted in the deed. Carl did not have the description with him, but stated that he would furnish the same later. A few days subsequently, Miss Elizabeth, at the request of the deceased, brought to the latter the Briot deed conveying to Ludwig Bierwagen the two twenty-acre tracts, and, after examining said deed and comparing the description contained therein of the twenty-acre tract in dispute with her tax receipts, deceased requested her daughter to mark in brackets with a pencil in the Briot deed the twenty acres described in the seventh paragraph of the amended complaint (the real property which is the subject of this controversy), and then take the Briot deed as so marked to Barker and state to him that it was her wish that he prepare a deed in accord with the description in the Briot deed as indicated by the pencil marks, so that the deed, as so prepared, would, upon its being executed by her, convey to plaintiff the real property in dispute. A few days before Christmas of the year 1915, Miss Elizabeth, following the instructions of her mother in that particular, took the Briot deed to Barker, and, handing it to him, called his attention to the marked description in said deed and "told him," so she testified, "that that part in brackets (made by pencil, as explained) was the property that she (the deceased) wanted to deed to Mrs. Merkle. Barker said he would attend to it. . . . He (Barker) brought the deed he prepared out to the house some time in February, 1916. . . . He said to my mother that he had brought the deed which mother asked him to make for her to sign. I interpreted to my mother what Barker said to her (the deceased being a German by birth and unable intelligibly to speak or understand the English language). I saw my mother sign this paper" (referring to the deed which the witness inspected while testifying). Miss Bierwagen testified that Barker, as a notary, took her mother's acknowledgment of the deed. The deceased later delivered the deed into the possession of her daughter, Elizabeth, and instructed her to hold possession of it until after her (deceased's) death, and then deliver it to plaintiff. Miss Elizabeth thereupon took

the deed to the Nevada County Bank, where she and Carl Merkle jointly rented and maintained a safe deposit box, and deposited the deed in said box. In this immediate connection it may be stated that Miss Elizabeth testified that the deceased never had a key or any access to the deposit box in which the deed was placed. In fact, that witness testified that her mother had not for many years been at the bank where said safe deposit box was maintained by herself and Carl Merkle; that she and said Merkle shared the expense of maintaining said box, and that she paid her share out of her own money.

On June 1, 1917, the deceased made and executed (at least attempted to do so) a new will. This instrument changed, and consequently in that particular was different from, the will of 1911 with respect to certain bequests and also as to the disposition of the residue of the estate after the payment of the bequests as so changed. It contained, however, the same provision by which the deceased attempted to dispose of the real property in dispute as was contained in the will of June 5, 1911, to wit: That the said real property should go to the plaintiff, but she to pay to Christian and Miss Elizabeth Bierwagen fifteen hundred dollars each. In said will Christian Bierwagen and Carl F. Merkle were nominated and appointed the executors thereof. The instrument was signed by Christian Bierwagen and Carl F. Merkle as witnesses, and acknowledged by the deceased before a notary public. (This will, for reasons not necessary to state herein, is of doubtful validity.) Besides, having been copied, except as to the bequests mentioned, from the will of 1911, the description of the property therein was incorrect. Said will was by the deceased delivered into the possession of Miss Elizabeth, with the request by deceased that she keep possession of it until after the latter's death. Within a brief time thereafter, Miss Elizabeth deposited the will in the safe deposit box above referred to, where it remained with other papers, including the deed of deceased attempting to grant the real property in question here to the plaintiff, until the death of the deceased in January, 1923. About a week after the death of deceased, Elizabeth Bierwagen took the said deed and the purported will of June 1, 1917, to the law office of Messrs. Nilon & Nilon, in Grass Valley, and turned the documents over to

that firm of lawyers with instructions to inaugurate and pursue to a final conclusion such legal proceedings as said lawyers might conceive to be necessary to carry out the intention of the deceased with respect thereto, if legally it could be done. Examining the documents, the lawyers advised that the deed as it then stood was fatally defective, in that it did not contain a sufficient or complete description of the real property that it appeared to have been the intention of the deceased to convey to plaintiff, and that it was doubtful whether the will of 1917 involved a valid testamentary disposal of the estate of the deceased. It was, however, suggested that the deed should nevertheless be delivered by Miss Elizabeth to the plaintiff, named therein as the grantee. The plaintiff was thereupon sent for, and, upon appearing in the office of the lawyers named, Miss Elizabeth gave the plaintiff possession of the deed by a manual delivery thereof to her (plaintiff). The plaintiff, after reading the deed, handed it to a member of said law firm with the request that he (the lawyer) cause it to be recorded in the office of the county recorder of said county. The deed was accordingly recorded on the twenty-ninth day of December, 1923.

On the seventeenth day of January, 1923, a petition was filed in the superior court, in and for the county of Nevada, by Christian Bierwagen and Carl F. Merkle, executors therein named, for the probate of the will of the deceased, dated and purporting to be executed on the first day of June, 1917. On the thirteenth day of February, 1923, an order was made by said court admitting said will to probate, and thereupon letters testamentary were issued to said Bierwagen and Merkle.

The above statement of the facts is taken from the testimony of Carl F. Merkle and Miss Elizabeth Bierwagen. The testimony of those witnesses was corroborated by C. H. Barker, the notary public, the plaintiff, and Christian Bierwagen upon the several material matters coming to their knowledge, respectively.

Barker testified to the fact of the preparation of the deed by his stenographer. He stated that Miss Elizabeth Bierwagen brought to him the Briot deed, called his attention to the fact that the description of the land which was to be conveyed by the deed he was to prepare was contained in the Briot deed within brackets made with pencil; that

he later dictated the description to his stenographer, but inadvertently omitted to insert in the description the township within which the fractional sections are situated, and also the range; that the error in placing the property in "Chicago Park" was solely due to his own carelessness. (This latter error in the deed may perhaps be accounted for by the fact that the land in dispute was situated near a tract of land known as and commonly called "Chicago Park." All the witnesses, when testifying, referred to said real property as being *at* "Chicago Park.") Barker further testified that he personally took the deed to the home of the deceased; that the contents of the instrument were translated to deceased by her daughter, Elizabeth, before she (deceased) signed it; that he saw deceased subscribe her name to the deed, and that he took her acknowledgment.

The plaintiff testified to the fact of the making of the agreement and the terms thereof; that the real property which the deceased agreed to give to her upon the death of the former was the real property involved herein and described in the seventh paragraph of the amended complaint; that she and her husband repaired (in fact, practically rebuilt) the house on the premises, as stated by her husband in his testimony, at an expense of approximately three thousand dollars; that both continuously resided on said premises, performing the services which they, respectively, agreed to perform from the year 1911 until the death of her mother; that neither she nor her husband (and the last named likewise testified) ever received from the deceased any remuneration whatsoever for their ·said services, except the consideration for which they· agreed to live with and take care of the deceased and the premises in question. She testified that she was not present when her mother signed and purported to acknowledge the execution of the deed, and never saw the deed or read the contents thereof until after her mother's death, when it was delivered to her in the law office of Nilon & Nilon by Miss Elizabeth Bierwagen, but that she understood, and in fact knew, from the agreement referred to and conversations with the deceased it was the intention of her mother to convey to her (plaintiff) the property upon which they resided from 1911· until the death of the deceased, and which is described in the seventh paragraph of the amended complaint. Plaintiff

further testified that prior to the time that the deed prepared by Barker was signed by the deceased she heard the latter say to her daughter, Elizabeth, that she (deceased) ''wanted her (Elizabeth) to see Barker and have him make a deed conveying the real property in dispute to her (plaintiff). It is not necessary to refer to the testimony of Christian Bierwagen further than to say that it supports in all vital respects the testimony given by the plaintiff, Carl Merkle and Miss Elizabeth Bierwagen.

There is in the record testimony to the effect that, when the purported deed was executed by the deceased, she owned no real property in Nevada County other than that described in the seventh paragraph of the amended complaint. Mrs. Catherine Tucker, a professional searcher of records at Nevada City, county seat of Nevada County, testified that she had searched the public records of said county, and from such investigation found that at no time in the year 1915 was there any other real property on record in the name of the deceased than the twenty-acre tract and improvements involved in the present controversy.

It is perfectly plain from the foregoing statement of the testimony presented by the plaintiff that the trial court, believing said testimony, was warranted in finding, as in effect it did find, these facts: 1. That the deceased made the agreement with the plaintiff and the latter's husband which is set forth in the amended complaint; 2. That the plaintiff and her husband performed the services for which deceased agreed to convey or transfer the said real property to plaintiff; 3. That, in pursuance of her purpose to perform, on her part, said agreement, she intended and attempted to convey to the plaintiff, by means of the deed set out in the amended complaint, the real property described in the seventh paragraph of said pleading; 4. That, when she signed the deed prepared by Barker, she believed and understood that the instrument contained a correct description of the real property involved in this dispute, and that the instrument as signed by her would convey and transfer to plaintiff said real property; 5. That the plaintiff believed and understood that, by the deed, the deceased intended to convey said property to her, and believed that the same would be and was correctly described in said instrument; 6. That the deceased delivered the deed

to her daughter, Elizabeth, with instructions to hold it until after her (deceased's) death and then deliver the instrument to the plaintiff, and that said Elizabeth did, after her mother's death, hand the same to plaintiff.

As stated, the finding that the agreement by and between the deceased on the one hand and the plaintiff and the latter's husband on the other, was made, as alleged in the complaint, is abundantly supported by the evidence. Indeed, the intervener made no substantial showing contradictory of the testimony disclosing the making of the agreement.

The deed in question constituted the mere conduit through or by means of which the deceased attempted, *inter vivos,* to perform her part of the agreement, and even if it were necessary to hold that the said deed was for any sufficient reason fatally defective—if, for instance, in fact or in law there had been no delivery—still the agreement, as alleged, proved and found, being supported by an adequate consideration (Civ. Code, sec. 3391), would be enforceable in equity and the plaintiff thus vested with title to said real property, notwithstanding that it rests in parol. (Pomeroy on Specific Performance, p. 268; *McCabe* v. *Healy,* 138 Cal. 81 [70 Pac. 1008]; *Stewart* v. *Smith,* 6 Cal. App. 152 [91 Pac. 667]; *Barry* v. *Beamer,* 8 Cal. App. 200 [96 Pac. 373].) We are, however, not concerned here with or about the proposition last suggested. As seen, the relief which the plaintiff seeks by her action is a reformation of the deed in question so that it will express the intention or purpose of the deceased in executing that instrument. And, since as shown above, it is established by the well-buttressed findings of the trial court that the agreement referred to was made as alleged in the amended complaint, and that the deceased endeavored, in consonance with said agreement, to convey to plaintiff the real property set out in said complaint, there are left for consideration but two propositions, to wit: 1. Whether the mistake or error involved in the failure to insert in said deed a complete or proper description of the property thereby attempted to be conveyed was a "mutual mistake of the parties," in the sense contemplated by section 3399 of the Civil Code; 2. Whether there was a valid delivery of the deed to the plaintiff, the named grantee.

The section of the code just named reads: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

Given a strict or literal construction and application, it would perhaps be necessary to hold that, within the meaning of the above section, the "mistake" which it is the purpose of this action to correct by a revision of the deed was neither a mutual mistake nor "a mistake of one party which the other at the time knew or suspected," for it is obvious that the plaintiff, not being present when the deed was executed by the deceased, and never having seen or read the deed until after the death of her mother, was without opportunity to hear and know, and was, therefore, without reason to suspect, that the instrument did not contain a correct description of the property which it was the intention of both parties thereby to convey. The section, however, has never been subjected to so strict a construction, and, since the remedy it affords in the cases to which it was and is designed to apply is of an equitable nature, or peculiarly conversant with the practice of courts of equity, it should never be so construed and applied, unless the manifest justice of the case imperatively requires it. We think that the circumstances of the instant case, as disclosed by the evidence, justify the conclusion that, within the meaning and intent of section 3399 of the Civil Code, the mistake was mutual, or the mistake of both the deceased and the plaintiff. A mistake of fact consists, among other things, in "a belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has not existed." (Civ. Code, sec. 1577, subd. 2.) It is undoubtedly true that the plaintiff, although not present when the deceased signed and acknowledged the deed, and never saw or read it until after the death of the deceased, knew that the latter intended to make the instrument, knew that it had been made and consequently of its existence, and knew, from her conversations with deceased, the verbal agreement re-

ferred to and the wills she attempted to execute, that the deceased intended by the deed to convey the real property in dispute to her (plaintiff). The evidence clearly shows that the deceased, up to the time of her death, and that plaintiff up to the time that the instrument was delivered to her, believed that the deed contained a correct description of and conveyed to plaintiff the real property described in the seventh paragraph of the amended complaint.

The case of *Cleghorn* v. *Zumwalt*, 83 Cal. 155 [23 Pac. 294], involved an action to reform a deed by which a larger interest in the land would be conveyed than the owner supposed she owned therein. An agreement previously made by and between the parties for the sale and purchase of the land called for the transfer of the owner's entire interest in a larger tract of land, which the latter believed consisted of only a one-fifth interest therein, whereas, as the owner discovered after the deed was executed and delivered to the grantee, and the latter had paid the consideration for the transfer, she owned, without knowing it at the times of the agreement and the grant, and therefore unintentionally had conveyed to the grantee, by the general description of the land contained in the deed, a three-fifths instead of a one-fifth interest in the larger tract. The trial court refused to decree a revision of the deed, "not on the ground," as the court in that case states it, "that it would be inequitable, or would not make the deed conform to the purchase as actually made, but on the technical ground that at the time of the actual execution and delivery of the deed there was not a mutual mistake of fact as to what it conveyed." Reversing the case, and referring to the position of the trial court as just indicated, the court said: "In this we think the court erred. There is no doubt whatever that at the time the minds of the parties met, and the bargain was actually made, the mistake was mutual. Both then understood and believed that what the one was selling and the other was buying was the undivided one-fifth, and the price was fixed on that basis. The execution and delivery of the deed afterward was but the carrying into effect of the agreement already made. The mistake relates to the time of the agreement, not merely to the time of the carrying of the agreement into effect. But even if it be held that the cause of action must relate solely to the condition and un-

derstanding of the parties at the time of the execution and delivery of the deed, the case is one which comes within the provisions of section 3399 of the Civil Code, and entitled the plaintiff to the relief demanded.'' (See, also, 22 Cal. Jur., p. 718 et seq., and cases cited in the footnotes.)

It is true in this case that the amended complaint does not *expressly* allege, nor did the court likewise find, that the fact that the deed did not fully or completely describe the property was due to the *mutual* mistake of the plaintiff and the deceased. On the contrary, both the allegations of said complaint and the court's finding in this respect are that the mistake was that of the deceased. The amended complaint and the findings, however, set forth and find the facts of the several transactions (including the making of the verbal agreement between the deceased and the plaintiff) culminating in the making of the deed, and from that statement and those findings of the facts the necessary implication is that the mistake was mutual as between the parties. In other words, from the facts stated in the complaint and as found by the court is plainly deducible the fact that the deceased mistakenly believed, when she signed the deed, that she was thereby conveying to plaintiff the real property described in the seventh paragraph of the complaint; and from the facts so stated and as found by the court, is likewise deducible the fact that the plaintiff, as to said deed, erroneously believed the same thing. Indeed, in the very nature of the situation, as disclosed by the facts stated in the complaint, and as found by the court, relative to the several transactions leading to the making of the deed, neither the plaintiff nor the deceased could have entertained any other supposition or belief as to the purpose and the intended effect of the deed as executed by the deceased.

The amended complaint, as to the matter of the mutuality of the mistake, stated facts sufficient to withstand the force of the general demurrer, which, as seen, was incorporated in the answer, and the facts found by the court are sufficient to support the judgment upon the theory that the failure fully or properly to describe in the deed the property thereby intended to be conveyed involved a mutual mistake as between the parties, within the intent or contemplation of section 3399 of the Civil Code. This construction of the complaint and the findings is peculiarly

proper under the circumstances of this case, for, as seen, in point of fact, the defective description of the property was due to the carelessness of the scrivener who drafted the instrument, the deceased's actual mistake (which in the very logic of the situation also became that of plaintiff) being, as has been declared, in assuming and believing that he (the scrivener) had prepared the deed in accord with deceased's instructions as communicated to him through her daughter, Elizabeth, as to the description of the property which she thereby intended to convey to plaintiff.

■ The point that there was not a legal delivery of the deed to the plaintiff (the grantee) derives no support from the record. The question whether a deed has been delivered is one of intention; and ·this question is always one of peculiar importance where, as here, the deed is given by the grantor into the possession of a third party with unconditional instructions to deliver it to the grantee at some future time. The rule is thus stated in *Crozer* v. *White,* 9 Cal. App. 612, 621 [100 Pac. 130]:

"We think that it is well settled in this state that where a grantor has placed the deed in the hands of a third party, with instructions to deliver it to the grantee, even where the same is to be delivered after the death of the grantor, if there be nothing to indicate an intention on the part of the grantor to recall the same, such deed has then passed beyond the control of the grantor for all time. Manifestly, the question must be determined by the grantor's intention in the matter, and is one of fact to be solved by the light of all the circumstances surrounding the transaction. (*Bury* v. *Young,* 98 Cal. 451 [35 Am. St. Rep. 186, 33 Pac. 338]; *Whittenbrock* v. *Cass,* 110 Cal. 1 [42 Pac. 300].)"

■ There is not a particle of evidence in the present case tending to show that, when she committed the deed to the custody of her daughter, Elizabeth, with instructions that she (the daughter) should hold it until after her (deceased's) death and upon the happening of that event to deliver it to the plaintiff, the deceased did not then and there intend to part with all control or dominion over said deed. To the contrary, all the circumstances show that her intention was to make the transfer of the property to plaintiff by said deed absolute. The deceased, when giving the deed into the possession of her daughter, with the instruc-

tions as explained, said nothing or used no language or made no expression indicating, or which could be construed as, an intention on her part to qualify such delivery or that the delivery was to be contingent upon the happening of some condition. Nor did she at the time say anything which could even be construed or understood as the manifestation of an intention in her not to part with all control and dominion over the deed and the property. To the contrary, the evidence shows, as the court found, that her intention was to make the conveyance absolute or unconditional. The testimony of Miss Elizabeth Bierwagen (uncontradicted as to this matter) is to the effect that the deceased handed the instrument to her (Elizabeth) with instructions that it be retained by her until her (deceased's) death and that thereupon she (Elizabeth) should deliver it to the plaintiff; that neither then nor thereafter did deceased make any other statement or declaration regarding the delivery of the deed, nor did she ever after its delivery ask for or recall or have possession of the deed. (*Hayden* v. *Collins,* 1 Cal. App. 259, 263, 264 [81 Pac. 1120], cited by appellant.) As has been before stated, it is clear from the verbal agreement (proved to the satisfaction of the trial court by the testimony of several witnesses), the conversations between deceased and others relating to said agreement, and the attempted testamentary devise of the property to plaintiff on two previous and different occasions, that the deceased, in pursuance of her previous agreement to transfer the property to plaintiff, intended by the deed to make an absolute or unconditional conveyance of the property to plaintiff; that, in other words, it was her intention that the deed should become effective upon her delivery of the instrument to her daughter with the instructions above indicated; that, in brief, she intended, when she delivered the deed to her daughter, a present transfer of the property.

The cases cited by counsel for appellants to support their claim upon the question of delivery present situations, as to the facts, materially different from that presented here.

In *Nelson* v. *Thomas,* 36 Cal. App. 433 [172 Pac. 398], it is merely held that the evidence was sufficient to sustain the finding that the deed therein involved was never delivered.

In *Jeffers* v. *Hulen,* 52 Cal. App. 590 [199 Pac. 350], it is held in an action to quiet title and involving the question of the legal effect of an instrument in the form of a grant, bargain, and sale deed, that the evidence was sufficient to support the finding that the instrument was intended to operate as a mortgage and not as an absolute conveyance of the property therein described. In that case it is properly held that the statement of the grantor accompanying the delivery of a deed that the grantee was to have the property described in the instrument "if anything happens to the grantor" "indicates that a present transfer was not intended, but rather a testamentary disposition of the property."

In *Stone* v. *Daily,* 181 Cal. 571 [185 Pac. 665], the wife executed a deed conveying her separate real property to her husband, and deposited the instrument, inclosed in an envelope, with a bank. On the envelope the grantor and her husband, the grantee, signed written instructions to the bank to the effect that the latter should keep the deed "so long as we may live"; that during such time the bank was not to deliver the deed to "either of us nor any other person . . . ; upon the death of either of us to deliver the same to the survivor on demand." Thus it will be seen, as Justice Olney stated in the opinion, the grantee was to receive title to the property only upon the condition that he survived the grantor, but that the deed was to be returned to her if her husband predeceased her. It is obvious that in that case there was no intention in the grantor when she deposited the deed with the bank to effect "a present transfer" of the property to her husband. The vesting of title in him was made contingent upon the condition that the wife (grantor) predeceased him.

It is obvious that the above cases are not in point here. The other cases cited by appellant on the question of delivery are no less inapplicable here.

The contention that the deed in question being invalid because the real property purported thereby to be conveyed was not completely described therein, it was improper to admit parol testimony to supply the deficiency of the instrument in that particular, is untenable. One of the thoroughly established rules in equity is that said courts will reform contracts, both executed and executory, irre-

spective of the statute of frauds. "In other words, the statute does not prevent the court from reforming the written evidence of a contract within the statute, by enlarging or restricting the terms of the subject matter of the contract, so as to make it express the real agreement whenever it is clearly shown that by reason of fraud or mistake, either the terms or the subject matter of the contract, as it was intended and understood by the parties to it, is not embraced in the writing. . . . A contract required by the statute to be in writing cannot, of course, be enforced until it is in writing; but the statute does not interfere with the power of a court of equity to reform deeds or other instruments in which the parties intended to comply with the statute, but were prevented by fraud, accident or mistake." (*Williams* v. *Hamilton*, 104 Iowa, 423 [65 Am. St. Rep. 475, 501, 73 N. W. 1029]; see, also, 2 Pomeroy's Equity Jurisprudence, 2d ed., secs. 845, 862, 866; *House* v. *McMullen*, 9 Cal. App. 664 [100 Pac. 344]; *Mitchell* v. *Whitford*, 49 Cal. App. 46 [192 Pac. 457]; Civ. Code, sec. 3401.)

■ There are innumerable cases in which reformation of deeds has been allowed to correct a misdescription therein of the property intended to be conveyed, whereby (in some such instances) property has been included in or excluded from the grant or conveyance contrary to the intention of the parties. And generally, in such cases, it is impossible to establish the fact of the wrong description or the fact that the description does not correspond with the intention of the parties as to the particular land to be conveyed without a resort to parol evidence. Indeed, the practice in courts of equity with reference to the revision of written agreements, as is true of sections 3399 and 3401 of the Civil Code, which merely follow the equitable doctrine of reformation long existent prior to the adoption of said sections, presupposes the necessity for invoking the aid of parol evidence to support the plea for such relief, and this upon the equitable consideration that, while equity courts fully recognize the validity and efficacy of statutes of frauds, they will not permit such statutes to stand as a shield to wrongs which it is their specific purpose to prevent. In the present instance, however, it is claimed, as we have seen, that the case here is not one of mere misdescription of specific real

property, but one where there is no particular real property at all described in the deed, that for that reason the instrument is invalid, and that the insertion therein of a description of the property in dispute through or by means of the remedy of revision, as provided by section 3399 of the Civil Code, would amount to the making of a deed when none as to said or any property had ever existed. But it is perfectly clear that the deceased intended to cause to be described in the deed the property in dispute, and that there was an attempt in good faith to do so, but that such attempt, through the carelessness of the scrivener who prepared the document, was abortive. The description was partially correct, and the incompleteness of the description and the erroneous location of the property within the boundaries of ''Chicago Park'' constituted it a misdescription.

It must be borne in mind that the deed does not involve a voluntary transfer of the property, but is supported not only by a valuable, but, according to the evidence, an adequate consideration.

The order denying a motion for new trial is not appealable. The appeal from said order is, therefore, dismissed. The judgment and the order denying the motion to vacate the judgment are affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 10, 1927.